PRICE v. CITY OF FARGO, North Dakota, A Municipal Corporation, V. R. Lovell, Mayor of the City of Fargo, E. R. Orchard, Auditor of the City of Fargo, C. H. Mitchell, Treasurer of the City of Fargo, and James Kennedy.

(139 N. W. 1054.)

**City charter — statutory requirements — municipal contracts — good faith.**

1. In the absence of charter or statutory requirement, municipal contracts need not be let under competitive bidding. In such cases the corporate authorities are only required to act in good faith and to the best interests of the municipality.

**Bids — lowest bidder — taxpayer — fraud — proof.**

2. Where bids are requested, but there is no law requiring competitive bidding, nor that the contract be let to the lowest bidder, such contract need not be let to the lowest bidder, and where it is awarded to a higher bidder, a taxpayer cannot have the contract set aside where there is no proof of fraud.

**Statutes — competitive bidding — municipal contracts.**

3. Article 18, chap. 62, Laws of 1905 (art. 18, chap. 30, Political Code of 1905), which provides for competitive bidding and the prior estimate of probable cost in the case of certain municipal contracts, does not apply to municipal contracts for the erection of filtration plants and similar buildings.

Opinion filed February 1, 1913.

Appeal from the District Court for Cass county; *Pollock*, J.

Action to enjoin the city of Fargo and the city officials of said city from carrying out a contract for the erection of a water filtration plant for said city, on the ground of the illegality of said contract. Writ denied.

Affirmed.

The plaintiff has appealed from a judgment of the district court of Cass county, refusing to grant him injunctional relief, and asks for a trial *de novo* in this court. He sues as a taxpayer, and the prayer of his complaint is as follows: "That the defendant city of Fargo, the

Note.—For an extended note on the question of discretion in choosing between bidders for public contract, see 38 L.R.A. (N.S.) 653.

defendant V. R. Lovell, mayor of said city, E. R. Orchard, auditor of said city, and defendant C. H. Mitchell, treasurer of said city, and each and all of them, may be perpetually enjoined from certifying and selling the bonds of said city voted as in this complaint alleged, and applying the proceeds of said bonds, or any part thereof, to the payment of the cost of construction of said water filtration plant under the terms of said contract, and be enjoined from doing anything toward the construction and erection of said water filtration plant, and from in any manner carrying out with the defendant James Kennedy the contract hereinbefore described, and that the defendant James Kennedy be perpetually enjoined from further proceeding with the construction and erection of said water filtration plant; and for such other and further relief as in equity plaintiff may be entitled to."

The facts of the case are substantially as follows: On the 6th day of July, 1910, there was held in the city of Fargo a special election for the purpose of voting for waterworks bonds to aid in the construction of a filtration plant. At this election the following question was duly submitted to the voters of the city: "Shall the city of Fargo issue bonds in the sum of $65,000, bearing interest at the rate of 5 per cent per annum, for the purpose of paying the cost of the machinery and materials for and the construction of a waterworks station and filtration plant, making the necessary connections with the present existing water mains and water plant, and installing therein the necessary pumps, machinery, appliances, and apparatus for the operating of the same, said plant and machinery to be used for the purpose of furnishing to the inhabitants of the city of Fargo a pure water supply, and for the purpose of fire protection for said city." This proposition was carried by a vote of 648 to 78. On the 28th day of March, 1911, at a special meeting of the said city council, the city engineer submitted plans and specifications for a mechanical filtration plant, which plans consisted of five sheets, numbered from 1 to 5, inclusive, and specifications for said proposed plants, consisting of eighty-nine pages; and said council passed a resolution to the effect "that the plans and specifications as submitted by the city engineer for a filtration plant be adopted and filed." At the same meeting the following motion was passed: "That the auditor be instructed to advertise for the construction of a filtration plant in accordance with the plans and specifications on file, bids to

be submitted on or before 5 o'clock P. M. on April 27, 1911." The plans and specifications of the city engineer, above referred to, however, were not accompanied by an estimate of the probable costs of construction, and the city council did not at any time approve by resolution an estimate of the probable cost of the plant described in said plans and specifications. On March 30, April 1, and April 5, 1911, the city auditor published in the official paper of the said city the following advertisement for bids:

## Proposal for Bids.

Sealed proposals will be received until 5 o-clock P.M. of Thursday, April 27, 1911, for erecting and furnishing a complete water purification plant of 6,000,000 gallons daily capacity, 4,000,000 gallons daily capacity of which will be constructed at this time, including excavations, foundations, concrete masonry reservoirs, and filters and head house, together with mechanical equipment, and all piping and appurtenances complete ready for occupancy. The following are the approximate areas covered by the more important structures: Head house, 2,-800 square feet; filters, 3,700 square feet; coagulating reservoirs, 15,-000 square feet; clear water reservoirs, 3,700 square feet. The reservoirs are approximately from 12 to 20 feet down, mostly of reinforced concrete construction with concrete and brick with tile roof. Filters of reinforced concrete. Specifications and general plans may be obtained at the office of the city auditor of the city of Fargo after this date. A certified check on a Fargo, North Dakota, bank in the sum of 5 per cent of the amount of the proposal, deposited in accordance with the terms of the specifications, will be required of each bidder. A deposit of $15 will be required for each set of plans and specifications given out, which will be refunded upon return of said sets in good condition. A surety company bond by a company doing business in the state of North Dakota for an amount equal to 50 per cent of the contract will be required of the successful bidder. The right is reserved to reject any and all bids.

(Signed) E. R. Orchard,
City auditor.

No further or other advertisement for bids was made. No bids appear to have been received prior to the 18th day of April, 1911. On the said 18th day of April, 1911, at an adjourned, regular meeting of the city council, a motion was carried "that the time for receiving bids for filtration plant, head house, pumping station, boilers, engines, etc., which was heretofore designated as April 27th, be extended to the 8th day of May, 1911, and that the city engineer be and is hereby directed to notify bidders of such extension of time." On the 27th day of April, 1911, at a meeting of the city council of said city, a motion was passed, authorizing the employment of Chas. B. Burdict, an expert engineer, and member of the firm of consulting engineers of Alvord & Burdict, of Chicago, Illinois, to aid the city council and the city engineer in determining which was the lowest bid for the construction and erection of said water filtration plant. On the 8th day of May, 1911, at an adjourned meeting of the city council, the bids of all bidders for the construction and erection of said plant were opened, and a motion was passed referring all of said bids to the city engineer, the expert consulting engineer, Chas. B. Burdict, and the members of the fire and water committee, to examine and report upon as to the merits and value of the respective bids on the night of May 12, 1911. The bids received were five in number, and were substantially as follows:

1. Pittsburg Filter Manufacturing Company, check accompanying same, $6,500. Proposition No. 1 includes items 34–36–37–40–41–43; Prints 817–31–32–33–34–35–102–69–104–54–106–42–101–65, 138 72–391; 91–105; 55–89; 51–102; 67–107; 52–90–41; all complete for the sum of $115,700.

Proposition No. 2, add to the above price $1,600.

Proposition No. 3, add to the above price $2,200.

Proposition No. 4, add to the above price $520.

Proposition No. 6, deduct $375.

Proposition No. 7, deduct $300.

Proposition No. 8, deduct $200.

Proposition No. 9, deduct $450.

Proposition No. 10, deduct $1,500.

2. Thomas F. Powers & Company, check accompanying same, $6,-000. Thomas F. Powers, in conjunction with Pittsburg Filter Manufacturing Company, agree to erect plant complete for $109,300.

3. S. Birch & Sons Construction Company, check accompanying same $6,100. S. Birch & Sons Construction Company, bidding with Pittsburg Filter Manufacturing Company, agree to construct plant complete for $118,000.

4. Bid of James Kennedy hereinafter set out in full.

5. Fargo Plumbing & Heating Company, checks $6,000, $750, $600. Proposes to furnish all materials, perform all labor, as per engineer's specifications, and our list of exhibits does not include low lift pumps, in the sum of $130,507. The above figures include the boilers, pumps, and stokers, as stated in bid No. 1, of poser equipment. If desired to take advantage of bids 2, 3, 4, and 5, the amounts may be added or deducted as stated therein.

Bid No. 1. Pumping Machinery.

1 Horizontal cross-compound high-duty, Corliss pumping engine, 4,-000,000 capacity.

3 150 H. P. water tube boilers and 3 chain grate stokers erected complete as per engineer's specifications,—all for the amount of $22,-575.

Bid No. 2. Horizontal cross-compound high-duty Corliss pumping Engine, 4,000,000 capacity.

2 250 high duty water tube boilers and 2 chain grate stokers, all for the price of $22,335.

Bid No. 3. 1 horizontal cross-compound high-duty Corliss pumping engine, capacity 4,000,000 gals., 3 150 horse power water tube boilers. Three chain grate stokers, all for the price of $22,447.

Bid No. 4. 1 horizontal cross-compound high-duty Corliss pumping engine, 4,000,000 gal. capacity; 2 250-horse power water tube boilers, built for a pressure of 185 lbs. 2 chain grate stokers for the price of $21,393.

Bid No. 5. 1 horizontal cross-compound high-duty Corliss pumping engine, capacity 4,000,000.

3 150-horse power Heine water tube boilers with 3 150-horse power Jones stokers, total equipment, $23,922.

The bid of James Kennedy, exclusive of the plans and specifications attached thereto, was as follows:

Fargo, N. D. May 8, 1911.

Hon. Mayor and City Council, City.

Gentlemen:—

I propose to furnish you a filter plant as per drawings F–862 to F–872 inclusive and F–875 to F–877 inclusive. E–660, 663, 670, 687, 692, 693, No. 3, R. 2456, also specifications No. 1224 for the sum of ninety-eight thousand nine hundred and sixty dollars. ($98,960.)

If the sump, pump, and valves are installed same as shown on the drawing, add $1,500. If I am to stand the cost of the test of the plant add $1,500. If the air wash is not used, and a larger wash pump is used in place of the one specified, deduct $1,150. If the sampling pumps on the filters, marble tables, and bowls are left out with sampling pumps, and sight tubes for the raw coagulated water and filter water are installed, deduct $650. If iron hand rails are used in place of brass hand rails, deduct $260. If Troy vertical engine is used in place of the steam turbines on wash pump, deduct $480. If Earle controlling apparatus is used for the chemical feed, add $2,000. If Earle rate controllers are used in filter bed, add $1,680. If building for head house and substructure over filter is built the same as drawings No. 876 inclosed and special specifications, deduct $4,000. If the Vivian controller as per No. 877 and No. 3 are used on the filters, deduct $200.

The party furnishing me with the equipment plant is licensed in the Jewell down draft patent, and also holds other patents covering every detail of this plant as designed. I will furnish the city a bond, protecting it from any suit for infringement of any patent used in this plant, if the city so desires. Yours respectfully.

(Signed) James Kennedy.

There is some question as to whether the plans and specifications referred to in this bid, and which were drawn and submitted by Kennedy himself, complied in all particulars with those prepared by the city; and although the advertisement for bids and the contract provided generally that the building should be constructed according to the plans and specifications of the city, the specifications of Kennedy contained

the provision that "it is understood that wherever the drawings or specifications of James Kennedy conflict with those of the city engineer of the city of Fargo, North Dakota, the drawings and specifications of James Kennedy shall govern."

The plans and specifications prepared by the city engineer, referred to in the published proposal for bids, described a complete mechanical filtration plant of fixed dimensions, capacity, and material. The plans consisted of five sheets, and the specifications consisted of eighty-nine typewritten pages. The plans carefully described the dimensions of the buildings and chambers and the location of the apparatus. The specifications described the material, the details of said plant, the apparatus, and the function of the apparatus and appliances. As to a number of patented appliances, however, no particular patent was specified, but as to such appliances the city left the determination of the kind and make of appliances to be installed until after the bids had been received, and bidders were invited to bid upon any of the different kinds and makes of equipment and appliances upon the market and in use in the construction of water filtration plants, and were invited to submit plans and specifications thereof. After the submission of said bids the engineer and members of the committee to whom the same were referred reported to the city council that the bid of James Kennedy was the lowest and best bid for the construction of said plant, and the same was accepted and approved by the city council as the lowest and best bid, and said council by resolution accepted the said bid at the sum of ninety-six thousand two hundred and twenty dollars ($96,-220), and authorized the proper officers to execute a contract with said Kennedy in accordance therewith. Thereupon a contract with said Kennedy was prepared, submitted to and read to the city council, and spread upon the minutes of said body in full, except as to the date of execution thereof. On the 15th day of May, 1911, the said contract was executed and signed. The bid of the said Kennedy was not accompanied by a bond for the full amount of his bid, but upon the execution of the contract, the said Kennedy executed and delivered to the city a bond in the sum of $50,000. Immediately upon the execution of the contract, the said Kennedy proceeded to carry out the same, and at the trial of the action had completed a substantial portion thereof; and the said city, for the purpose of making such purification

plant usable upon its completion, had let three separate contracts for connections, involving the expenditure of many thousands of dollars, and the work thereon had been partially completed.

No fraud in connection with the letting of the contract in question is alleged or claimed. Plaintiff is satisfied with complaining and alleging that the contract was illegally let, because: (1) The city council and its officers made no attempt to comply with the provisions of chapter 62, Laws of 1905. (2) No estimate of cost of the work to be done was made or filed by the city engineer or approved by the city council. (3) The plans and specifications filed by the city engineer were merely general plans and specifications, and were not such as permitted or required competitive bidding, and did not comply with the provisions of chapter 62, Laws of 1905. (4) The proposal for bids did not require and specify that the work should be done "according to the plans and specifications on file in the auditor's office." (5) The advertisement for bids wholly failed to specify the time within which the work was to be completed. (6) The advertisement for bids wholly failed to call for bids based on cash payments for said work. (7) The defendant Kennedy's bid was to do the work according to his own plans and specifications, and not according to the city's. (8) The defendant Kennedy's bid was not accompanied by a bidder's bond for the full amount of his bid, as provided by chapter 46, Laws of 1907, page 64. (9) No contract bond was ever executed for the full amount of the contract price, as required by chapter 46, Laws of 1907, page 65. (10) The contract bond which was executed did not contain the provisions required by chapter 46, Laws of 1907, page 65. (11) The contract finally entered into between the city and defendant Kennedy was made after private negotiations between the mayor, the city attorney, Kennedy, the consulting engineer, and the fire and water committee of the city council, covering a period of several days after the bids were opened, and before the contract was finally awarded to said Kennedy, and said contract was not to do the work either according to the plans and specifications filed by the city engineer, or according to the plans and specifications submitted by defendant Kennedy with his bid, and was not arrived at as a result of competitive bids. (12) The contract with the defendant Kennedy did not require the work to be done according to the city's plans and specifications, which were on file in

the city auditor's office as required by § 149, chap. 62, Laws of 1905, but required it to be done in part according to Kennedy's plans and specifications, and in part according to the city's, and in part according to the new provisions inserted in the contract, and in part according to the plans prepared by the city engineer and never submitted to the other bidders. (13) Kennedy's bid was not in fact the lowest bid.

The city defended on the grounds: (1) That the provisions of chapter 62, Laws of 1905, were not applicable to buildings of the kind under consideration. (2) That, though the contract for the filtration plant was made on May 15, 1911, a complaint notifying the city of the nature of plaintiff's action was not served until June 26, 1911, the action merely having been begun by service of summons, unaccompanied by a complaint, on May 31, 1911; and no temporary restraining order having been applied for, and the contractor having been allowed to proceed with the work so that the same has now been practically completed, although not fully paid for, and the city having made large extensions of mains and pipes to connect therewith, and the city filtration plant and water supply being necessary to the general health and convenience of the city, the plaintiff is now estopped from proceeding in the action. Defendants also contend that the contract was in part let to the lowest bidder; that the bids were, in every essential, competitive. Defendants, however, admit that no prior estimate of probable cost was made.

*Stambaugh & Fowler,* for appellant.

The statute regulating the manner of letting contracts for public work by cities, applies to and governs the building of a water filtration plant. Constitution, §§ 183, 130; Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403; Ft. Scott v. W. G. Eads Brokerage Co. 54 C. C. A. 437, 117 Fed. 51; Platter v. Elkhart County, 103 Ind. 360, 2 N. E. 544; Moss v. Fairbury, 66 Neb. 671, 92 N. W. 722.

Municipalities have such powers only, as are expressed in their charters. 28 Cyc. 274.

The city of Fargo is governed by, and operating under the provisions of Chapter 62 of the Laws of 1905, which is its charter. State ex rel. Mitchell v. Mayo, 15 N. D. 327, 108 N. W. 36.

The city must strictly comply with all requirements and restrictions contained in charter. Laws 1905, chap. 62, secs. 142–149.

The entire statute and its general subject matter must be considered, in construing it. Vermont Loan & T. Co. v. Whithed, 2 N. D. 83, 49 N. W. 318; Grigsby v. Minnehaha County, 6 S. D. 492, 62 N. W. 106; Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 408.

Courts must harmonize the various provisions of a statute, so far as possible, to give effect to legislative intent. First Nat. Bank v. Lewis, 18 N. D. 393, 121 N. W. 836; Minot v. Amundson, 22 N. D. 236, 133 N. W. 551; Fremont, E. & M. Valley R. Co. v. Pennington County, 20 S. D. 270, 105 N. W. 929; State ex rel. Erickson v. Burr, 16 N. D. 581, 113 N. W. 705; State ex rel. Flaherty v. Hanson, 16 N. D. 348, 113 N. W. 371; Saunders v. Iowa City, 134 Iowa, 132, 9 L.R.A.(N.S.) 392, 111 N. W. 531; McQuiddy v. Brannock, 70 Mo. App. 535.

The mere numbering of the sections of an act is immaterial. Re Bull, 153 Cal. 715, 96 Pac. 366.

The statute requires competition in bids. Chippewa Bridge Co. v. Durand, 122 Wis. 85, 106 Am. St. Rep. 931, 99 N. W. 603; State ex rel. Dunn v. Barlow, 48 Mo. 17; Mazet v. Pittsburgh, 137 Pa. 548, 20 Atl. 693; American Pavement Co. v. Wagner, 139 Pa. 623, 21 Atl. 160; Trenton v. Shaw, 49 N. J. L. 638, 10 Atl. 273.

Statute is not limited to special improvements. State ex rel. Dunn v. Barlow, 48 Mo. 22; State ex rel. Purcell v. Anderson, 18 N. D. 147, 118 N. W. 29; Moran v. Thompson, 20 Wash. 525, 56 Pac. 29; LeTourneau v. Hugo, 90 Minn. 420, 97 N. W. 115.

Contract, if not let by competitive bids, is null and void. Plaintiff— a taxpayer—can maintain this suit. Engstad v. Dinnie, 8 N. D. 11, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Fox v. Walley, 13 N. D. 611, 102 N. W. 161; 2 High, Inj. 1263; Chippewa Bridge Co. v. Durand, 122 Wis. 85, 106 Am. St. Rep. 931, 99 N. W. 611.

This is in effect a suit by the public; laches is no bar, even if existing. Fox v. Walley, 13 N. D. 610, 102 N. W. 161; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; 2 High, Inj. 1260; Manly Bldg. Co. v. Newton, 114 Ga. 245, 40 S. E. 278; McLauren v. Grand Forks, 6 Dak. 397,

24 N. D.—29.

43 N. W. 710; Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90; Ricketson v. Milwaukee, 105 Wis. 591, 47 L.R.A. 685, 81 N. W. 864; Platter v. Elkhart County, 103 Ind. 360, 2 N. E. 544; Forsyth County v. Gwinnett County, 108 Ga. 510, 33 S. E. 892; 28 Cyc. 1025, and cases cited. Broderick v. St. Paul, 90 Minn. 443, 97 N. W. 118.

The public notice for bids must strictly comply with the statute. Platter v. Elkhart County, 103 Ind. 360, 2 N. E. 544; Windsor v. Des Moines, 101 Iowa, 343, 70 N. W. 214; Bennett v. Emmetsburg, 138 Iowa, 67, 115 N. W. 582.

Contract must be awarded to lowest competitive bidder. Section 148 of act; Hannan v. Board of Education, 25 Okla. 372, 30 L.R.A.(N.S.) 214, 107 Pac. 646; 2 Dill. Mun. Corp. § 807; Diamond v. Mankato, 89 Minn. 48, 61 L.R.A. 448, 93 N. W. 912; Fones Bros. Hardware Co. v. Erb, 54 Ark. 645, 13 L.R.A. 353, 17 S. W. 7; Atty. Gen. ex rel. Cook v. Detroit, 26 Mich. 263; Nash v. St. Paul, 11 Minn. 174, Gil. 110.

Plans and specifications for such work are necessary. Huntington County v. Pashong, 41 Ind. App. 69, 83 N. E. 383; Chippewa Bridge Co. v. Durand, 122 Wis. 85, 106 Am. St. Rep. 931, 99 N. W. 611; Hannan v. Board of Education, 25 Okla. 372, 30 L.R.A.(N.S.) 214, 107 Pac. 646; Moran v. Thompson, 20 Wash. 525, 56 Pac. 29; Ertle v. Leary, 114 Cal. 238, 46 Pac. 1; State ex rel. Clark v. Douglas County, 11 Neb. 484, 9 N. W. 691.

City council has no power to permit one bid to be amended, so as to make it better than another. Wickwire v. Elkhart, 144 Ind. 305. 43 N. E. 216; Frame v. Felix, 167 Pa. 47, 27 L.R.A. 802, 31 Atl. 375; Moss v. Fairbury, 66 Neb. 671, 92 N. W. 721; Packard v. Hayes, 94 Md. 233, 51 Atl. 32; Andrews v. Ada County, 7 Idaho, 453, 63 Pac. 592; Sanitary Dist. v. Lee, 79 Ill. App. 169; Manly Bldg. Co. v. Newton, 114 Ga. 245, 40 S. E. 274; Piedmont Paving Co. v. Allman, 136 Cal. 88, 68 Pac. 493; Fay v. Reed, 128 Cal. 357, 60 Pac. 927; McBrian v. Grand Rapids, 56 Mich. 95, 22 N. W. 206; Ely v. Grand Rapids, 84 Mich. 336, 47 N. W. 447; Brady v. New York, 20 N. Y. 312; Kneeland v. Milwaukee, 18 Wis. 412; Wells v. Burnham, 20 Wis. 113; Ricketson v. Milwaukee, 105 Wis. 591, 47 L.R.A. 685, 81 N. W. 864.

Evidence of patented articles to be used, is incompetent. 1905

Code, § 7308, ¶ 8; U. S. Rev. Stat. Sec. 892, U. S. Comp. Stat, 1901, p. 673; Paine v. Trask, 5 C. C. A. 497, 5 U. S. App. 283, 56 Fed. 233.

The contract in this suit is null and void. Chippewa Bridge Co. v. Durand, 122 Wis. 85, 106 Am. St. Rep. 931, 99 N. W. 611; Ricketson v. Milwaukee, 105 Wis. 591, 47 L.R.A. 685, 81 N. W. 864; Frederick v. Douglass County, 96 Wis. 411, 71 N. W. 798; Mueller v. Eau Claire County, 108 Wis. 304, 84 N. W. 430; City Improv. Co. v. Broderick, 125 Cal. 139, 57 Pac. 776; McCloud v. Columbus, 54 Ohio St. 439, 44 N. E. 95; Addis v. Pittsburgh, 85 Pa. 379; Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96; State, McDermott, Prosecutor, v. Jersey City Street & Water Comrs. 56 N. J. L. 273, 28 Atl. 424; Brady v. New York, 20 N. Y. 312; Richmond County v. Ellis, 59 N. Y. 620; McDonald v. New York, 68 N. Y. 23, 23 Am. Rep. 144; Dickinson v. Poughkeepsie, 75 N. Y. 65; Lyddy v. Long Island City, 104 N. Y. 218, 10 N. E. 155; People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 25 N. E. 4.

Judgment for restoration of money paid should be rendered. Webster v. Douglas County, 102 Wis. 181, 72 Am. St. Rep. 870, 77 N. W. 885, 78 N. W. 451; Egaard v. Dahlke, 109 Wis. 366, 85 N. W. 369; Rev. Codes 1905, Sec. 7229; Buckingham v. Flummerfelt, 15 N. D. 112, 106 N. W. 403.

*Ball, Watson, Young, & Lawrence, Emerson H. Smith,* City Attorney, and *V. R. Lovell,* for respondents.

Assignments of error must be specific, and must be made in compliance with the rules of court, or they will be deemed abandoned. Hostetter v. Brooks Elevator Co. 4 N. D. 357, 61 N. W. 49; O'Brien v. Miller, 4 N. D. 308, 60 N. W. 841; Globe Invest. Co. v. Boyum, 3 N. D. 538, 58 N. W. 339; Thompson v. Cunningham, 6 N. D. 426, 71 N. W. 128; Brnjolfson v. Thingvalla Twp. 8 N. D. 106, 77 N. W. 284; Deindorfer v. Bachmore, 12 S. D. 285, 81 N. W. 297.

This case cannot be reviewed or retried. Griffith v. Walworth County, 20 S. D. 142, 104 N. W. 1117; Sucker State Drill Co. v. Brock, 18 N. D. 532, 123 N. W. 667; Brynjolfson v. Thingvalla Twp. 8 N. D. 106, 77 N. W. 284; Wilson v. Kartes, 11 N. D. 92, 88 N. W. 1023; State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912 C,

795; Marck v. Minneapolis, St. P. & S. Ste. M. R. Co. 15 N. D. 86, 105 N. W. 1106; Buckingham v. Flummerfelt, 15 N. D. 112, 106 N. W. 403.

Questions of fact, for review, must be specific, and clearly presented, and must not be mere legal questions. Douglas v. Richards, 10 N. D. 366, 87 N. W. 600; Salemonson v. Thompson, 13 N. D. 190, 101 N. W. 321.

Where acts sought to be enjoined and restrained are performed pending an appeal, judgment reversing the trial court improper and of no avail. Chicago, M. & St. P. R. Co. v. Sioux Falls, 28 S. D. 471, 134 N. W. 46; Wingert v. First Nat. Bank, 223 U. S. 670, 56 L. ed. 605, 32 Sup. Ct. Rep. 391.

The relief sought by plaintiff is inequitable. The interests of the public are paramount to the interests of the individual, and a taxpayer cannot use the processes of the court to do an injustice to the public. State ex rel. Walker v. McLean County, 11 N. D. 356, 92 N. W. 385; State ex rel. Madderson v. Noble, 16 N. D. 168, 125 Am. St. Rep. 628, 112 N. W. 141; Erickson v. Cass County, 11 N. D. 509, 92 N. W. 841; Wood v. Bangs, 1 Dak. 179, 46 N. W. 586; High, Inj. 9; Sheldon v. Rockwell, 9 Wis. 168, 76 Am. Dec. 265; 6 U. S. Dig.; Warden v. Fond du Lac County, 14 Wis. 618; Pettibone v. La Crosse & M. R. Co. 14 Wis. 443; Morris & E. R. Co. v. Prudden, 20 N. J. Eq. 530.

Injunction will not be granted when injury complained of is slight, compared to the inconvenience to the defendant and the public. Higbee v. Camden & A. R. Co. 20 N. J. Eq. 435; Kneeland v. Milwaukee, 15 Wis. 455; Wheeler v. Rice, 83 Pa. 232; Logansport v. Uhl, 99 Ind. 539, 50 Am. Rep. 109; McGuire v. Rapid City, 6 Dak. 346, 5 L.R.A. 752, 43 N. W. 706; National Tube-Works Co. v. Chamberlain, 5 Dak. 54, 37 N. W. 761; Wren v. Indianapolis, 96 Ind. 218; Frick v. Brinkley, 61 Ark. 397, 33 S. W. 527; Moore v. New York, 73 N. Y. 238, 29 Am. Rep. 134; McCullough v. Denver, 39 Fed. 307; Scharr v. Camden, — N. J. Eq. —, 49 Atl. 817; Tash v. Adams, 10 Cush. 252.

In the absence of fraud, though contract may be void, injunction will not lie. Brasher v. Miller, 114 Ala. 485, 20 So. 467; Keith v. Johnson, 109 Ky. 421, 59 S. W. 487; Ebert v. Langlade County, 107 Wis. 569, 83 N. W. 942; Farmer v. St. Paul, 65 Minn. 176, 33 L.R.A. 199,

67 N. W. 990; Delaware Bridge Co. v. Trenton City Bridge Co. 13 N. J. Eq. 46.

Injunction will not be granted where it would cause great injury to the public, without corresponding advantage to the complainant. Torrey v. Camden & A. R. Co. 18 N. J. Eq. 293; Higbee v. Camden & A. R. Co. 20 N. J. Eq. 435; Easton v. New York & L. B. R. Co. 24 N. J. Eq. 58; Traphagen v. Atty. Gen. ex rel. Jersey City, 29 N. J. Eq. 206.

In important public work, courts will not use their prohibitory power unless it is the only means to secure adequate redress. Traphagen v. Jersey City, supra; State, Youngster, Prosecutor v. Paterson, 40 N. G. L. 244; State, Rettinger, Prosecutor, v. Passaic, 45 N. J. L. 146.

The city, through its authorities, has ratified the contract, has received its benefits, and cannot contest its liability. Argenti v. San Francisco, 16 Cal. 256; People v. Swift, 31 Cal. 26; Davis v. Jackson, 61 Mich. 530, 28 N. W. 526; 1 Dill. Mun. Corp. § 463, and notes; Bruce v. Dickey, 116 Ill. 527, 6 N. E. 435; Pennsylvania v. Hays. 93 Pa. 72; Marshall County v. Schenck, 5 Wall. 772, 18 L. ed. 556; Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659; Re Millvale, 162 Pa. 374, 29 Atl. 641, 644.

The city had power to let, make, and enforce a contract for the erection of a filtration plant. Const. Secs. 130–183; Cal. Code, 1905, sec. 2678.

City may exercise powers incident and essential to the carrying out of powers granted. Mayo v. Dover & F. V. Fire Co. 96 Me. 539, 53 Atl. 62; Aurora Water Co. v. Aurora, 129 Mo. 540, 31 S. W. 946; Vaughn v. Greencastle, 104 Mo. App. 206, 78 S. W. 50; Schneider v. Menasha, 118 Wis. 298, 99 Am. St. Rep. 996, 95 N. W. 94; Clark v. South Bend, 85 Ind. 276, 44 Am. Rep. 13; Scott v. Laporte, 162 Ind. 34, 68 N. E. 278, 69 N. E. 675; Groner v. Portsmouth, 77 Va. 488.

A municipal contract made without competitive bids, etc., is valid, unless statute, charter, or ordinance prescribes otherwise. 28 Cyc. 657, 1025–1026; Crowder v. Sullivan, 128 Ind. 486, 13 L.R.A. 647, 28 N. E. 94; Yarnold v. Lawrence, 15 Kan. 126; Elliot v. Minneapolis, 59 Minn. 111, 60 N. W. 1081; Oakley v. Atlantic City, 63 N. J. L. 127, 44 Atl. 651; Trenton v. Shaw, 49 N. J. L. 638, 10 Atl. 273; Kingsley v. Brooklyn, 78 N. Y. 200, 7 Abb. N. C. 28, 5 Abb. N. C. 1.

There is no statute in this state requiring cities to file plans and specifications, advertise for bids, etc., in building a filtration plant. Laws 1905, chap. 62; Smith v. Randall, 6 Cal. 47, 65 Am. Dec. 475; Simonds v. Powers, 28 Vt. 354; Jones v. State, 1 Kan. 273; Griffith v. Carter, 8 Kan. 565; Opinion of Justices, 22 Pick. 571; Re Kilby Bank, 23 Pick. 93; Atty. Gen. v. Bank of Michigan, Harr. Ch. (Mich.) 315; Thorpe v. Schooling, 7 Nev. 15.

Statutes must be construed so as to carry out the intention of the legislature, though such construction may seem contrary to the letter of the statute. Wilkinson v. Leland, 2 Pet. 627, 7 L. ed. 542; United States v. Buchanan, 4 Hughes, 487, 9 Fed. 689; Kennedy v. Kennedy, 2 Ala. 571; Wilson v. Biscoe, 11 Ark. 55; Erwin v. Moore, 15 Ga. 361; Chandler v. Lee, 1 Idaho, 349; Perry County v. Jefferson County, 94 Ill. 214; Wabash, St. L. & P. R. Co. v. Binkert, 106 Ill. 298; Dubuque v. Dubuque, 7 Iowa, 262; Bailey v. Com. 11 Bush, 688; Cox v. Williams, 5 Mart. N. S. 141; Buhol v. Boudousquie, 8 Mart. N. S. 425; Ardry v. Ardry, 16 La. 264; Somerset v. Dighton, 12 Mass. 383; Staniels v. Raymond, 4 Cush. 314; Grimes v. Bryne, 2 Minn. 89, Gil. 72; Barker v. Kelderhouse, 8 Minn. 207, Gil. 178; Ingraham v. Speed, 30 Miss. 410; Riddick v. The Governor, 1 Mo. 147; State ex rel. Missouri Mut. L. Ins. Co. v. King, 44 Mo. 283; Kane v. Kansas City, Ft. S. & M. R. Co. 112 Mo. 34, 20 S. W. 532; Sargent v. Union School Dist. 63 N. H. 528, 2 Atl. 641; Brown v. Wright, 13 N. J. L. 240; Jersey Co. v. Davison, 29 N. J. L. 415; People ex rel. Atty. Gen. v. Utica Ins. Co. 15 Johns. 358, 8 Am. Dec. 243; Crocker v. Crane, 21 Wend. 211, 34 Am. Dec. 228; Smith v. People, 47 N. Y. 330.

Courts may declare that matters within the letter of the statute are not governed by the statute because not within its spirit. Church of the Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 511.

The words of a statute may be enlarged or limited, to bring the act within the legislative intention. Maxwell v. Collins, 8 Ind. 38; Miller v. State, 106 Ind. 415, 7 N. E. 209; Gray v. Cumberland County, 83 Me. 429, 22 Atl. 376; Mendon v. Worcester County, 10 Pick. 235; Com. v. Cambridge, 20 Pick. 267; Farmers' Bank v. Hale, 59 N. Y. 53; Territory ex rel. Sampson v. Clark, 2 Okla. 82, 35 Pac. 882;

State ex rel. Dolan v. Clarksville & R. Turnp. Co. 2 Sneed, 88; Ryegate v. Wardsboro, 30 Vt. 746; Cardinel v. Smith, Deady, 197, Fed. Cas. No. 2,395; United States v. Athens Armory, 35 Ga. 344, Fed. Cas. No. 14,473; Magruder v. Carroll, 4 Md. 335; Catlin v. Hull, 21 Vt. 152; San Francisco v. Hasen, 5 Cal. 169; Sams v. King, 18 Fla. 557; Noble v. State, 1 G. Greene, 325; Vermont Loan & T. Co. v. Whithed, 2 N. D. 83, 49 N. W. 318.

Many cases not expressly named may be comprehended within the equity and true intent of the statute. Whitney v. Whitney, 14 Mass. 92; Brewer v. Blougher, 14 Pet. 178, 10 L. ed. 408; Reiche v. Smythe, 13 Wall. 162, 20 L. ed. 566; Atkins v. Fibre Disintegrating Co. 18 Wall. 302, 21 L. ed. 844; People ex rel. Mason v. McClave, 99 N. Y. 83, 1 N. E. 235; Torrance v. McDougald, 12 Ga. 526; Mason v. Finch, 3 Ill. 223; Burke v. Monroe County, 77 Ill. 610; Territory ex rel. Sampson v. Clark, 2 Okla. 82, 35 Pac. 883; Palms v. Shawano County, 61 Wis. 211, 21 N. W. 77; Bingham v. Birmingham, 103 Mo. 345, 15 S. W. 533; Lee v. Roberts, 3 Okla. 106, 41 Pac. 595; Pond v. Maddox, 38 Cal. 572; Storms v. Stevens, 104 Ind. 46, 3 N. E. 401; Re Bulger, 45 Cal. 553; Lancaster County v. Frey, 128 Pa. 593, 18 Atl. 478; Chambers v. State, 25 Tex. 307; Hearn v. State, 25 Tex. 336; Deposit Bank v. Daviess County, 102 Ky. 174, 44 L.R.A. 833, 39 S. W. 1030, 44 S. W. 1131; Rawls v. Doe, 23 Ala. 240, 58 Am. Dec. 290; Moran v. Thompson, 20 Wash. 525, 56 Pac. 29.

BRUCE, J. (after stating the facts as above). It is well established that, in the absence of charter or statutory requirement, municipal contracts need not be let under competitive bidding. In such cases the corporate authorities are only required to act in good faith and to the best interests of the municipality. McQuillin, Mun. Corp. § 1186, p. 2634; Elliott v. Minneapolis, 59 Minn. 111, 60 N. W. 1081; Middle Valley Trap Rock & Min. Co. v. Morris County, 70 N. J. L. 625, 57 Atl. 258, affirmed in 71 N. J. L. 333, 60 Atl. 358; Yarnold v. Lawrence, 15 Kan. 126; Augusta v. McKibben, 22 Ky. L. Rep. 1224, 60 S. W. 291; Dillingham v. Spartanburg, 75 S. C. 549, 8 L.R.A.(N.S.) 412, 117 Am. St. Rep. 917, 56 S. E. 381, 9 Ann. Cas. 829; State, Schefbauer, Prosecutor, v. Kearney Twp. 57 N. J. L. 588, 31 Atl. 454; Fitzgerald v. Walker, 55 Ark. 148, 17 S. W. 702. In the case at bar

there is no proof or serious allegation of any fraud or lack of good faith
on the part of the municipal authorities. The proof, too, is conclusive
that the filtration plant in question is a matter of great public utility,
and one which is seriously and urgently needed. Where bids are re-
quested, but there is no law requiring competitive bidding, nor that the
contract shall be let to the lowest bidder, such contract need not be let
to the lowest bidder, and where it is awarded to a higher bidder, a tax-
payer cannot have the contract set aside where there is no proof of
fraud. McQuillin, Mun. Corp. ¶ 1228, p. 2691; Reihl v. San Jose, 101
Cal. 442, 35 Pac. 1013.

The all-important question for discussion, then, is whether article
18 of chapter 62 of the Laws of 1905 (art. 18, chapter 30, of the
Political Code of 1905), has any application whatever to municipal
improvements of the nature of that under consideration; that is to
say, of municipal improvements which are of general use and utility,
and which are maintained for the general purposes of government, or
of preserving and protecting the public health and safety, which are
not of any particular benefit to any particular property or any par-
ticular persons, as distinguished from the public as a whole, and which
therefore can and should be paid for out of the public revenues and the
public taxes levied upon the people as a whole, and not merely out of
the funds which may be derived from assessments based upon speʔial
benefits conferred. We think it is quite clear that the provisions of
the article in question have no such application. The title of the act
is "An Act for the Organization and Government of Cities, and to
Provide for the Limitation of Actions to *Vacate Special Assessments*
heretofore Made." It re-enacts, it is true, the general provisions of the
prior statute which relate to the general powers of cities, but it is quite
clear that its main and special purpose is to provide for a more com-
plete and comprehensive scheme in regard to what are generally known
as special or local improvements, the expenses of which are met by
special assessments upon the property benefited. In addition to the
general powers, which are usually given to cities and in regard to which
the act, in the main, merely re-enacts the provisions of chapter 28 of
the Code of 1899, the power is given to make many other improvements
by means of what are commonly termed special assessments. That is to
say, to construct pavements, sewers, sidewalks, and other improvements

which, though in a measure of public value, are also of a special value
to the owners of the adjacent property, and in such case to provide for
the payment of the expenses of such by levying an assessment upon the
persons benefited thereby.   The act nowhere makes any provision for
the erection and construction of filtration plants and other similar build-
ings by special assessments.   It does, it is true, provide in § 163 of
article 18 for the payment of one fifth of the cost "of any work here-
inbefore provided for other than sidewalks and opening and widening
of streets by general taxation of all taxable property in said city."
Such clause, however, clearly relates to the improvements mentioned
in article 18, in which § 163 is contained, namely, sewers, paving, and
water mains; for not merely is this to us made clear by the context,
but there is nowhere in the act any provision for the erection or con-
struction of general pumping stations, jails, courthouses, or filtration
plants, and which, as we have before said, are general, and not special,
in the benefits which they confer, by special assessments or by any other
means than by general taxation.   It is to be noticed, indeed, that §
149 contained in art. 18, which article by the terms of its title, re-
lates to sewers, paving, and water mains alone, and which, with article
17, are the only articles which relate to special assessments and to
what may be termed local improvements, expressly provides that "each
contract so entered into shall state the time on or before which such
work must be completed, and must state from what fund the amount
to be paid thereon by the city is to be paid, and that the consideration of
such contract is payable only in warrants drawn *on such fund,* and
that such city *assumes and incurs no general liability* under such con-
tract."   Such provision and such article must clearly and solely relate
to what are generally known as local or special improvements.   For
nowhere else is there any limitation on a city from contracting generally
for its buildings and improvements, and assuming a general liability
therefor, provided that the indebtedness therein created is within its
constitutional debt limit, and, in case bonds are issued, a proper sink-
ing fund and tax levy is provided for.   We are clearly, therefore, of
the opinion that § 142 of article 18, and which provides as a prere-
quisite to the construction or the letting of a contract, that the city en-
gineer shall file plans and specifications for such construction work,
together with details of the work to be done, and an estimate of its

probable cost, relates merely to the "construction or operation of sewers, to the opening, widening, and extending, paving, repaving, macadamizing, or curbing of any street, avenue, lane, highway, or other public grounds within the city limits, or to extending, relaying, and replacing any water mains, as such are the only improvements specified in the paragraph," or, as a matter of fact, in the article itself. The same, we believe, is also true of §§ 145, 146, 147, 148, and 149, which relate to the advertising for bids, the nature of the bids themselves, the bonds required to be given, and the contracts to be made thereunder. We are, in fact, led to the irresistible conclusion that art. 18 of chapter 62 of the Laws of 1905 relates merely, as it expressly states in its subtitle, to sewers, paving, and water mains, or, at any rate, to those improvements which are generally made and can be made by means of special assessments.

Another persuasive reason for holding that the provisions of article 18 of chapter 62 of the Laws of 1905, and the provisions for competitive bidding therein contained, relate merely to contracts for sewers, paving, and water mains, that is to say, to the local improvements provided for and treated of in such article, is to be found in the fact that the legislature of 1907 amended by paragraph 7 of chapter 46 of the Laws of 1907, § 148 of such article, that is to say, § 2783 of the Laws of 1905, in various particulars, and in such amendment used the word "article," and not "act." "The city council," the amended section reads, "shall have the right to reject any and all bids for work to be done under this *article,*" etc. This is contemporaneous construction of the highest order and of the highest significance. The purpose of the amendment was to provide that if the first bid was rejected the contract should be let not to the lowest, but to the lowest responsible bidder, and no particular point seems to be made of the word "article." It seems, however, to have been taken for granted that the word "act" in the original bill, that is to say, in § 148, art. 18, Laws of 1905, was used in the sense of *article.* If, indeed, such a construction is not given, and competitive bids are required in regard to all contracts let by the city, whether for paving, sewerage mains, or anything else, then it is only in the case of bids for paving, sewerage, and water mains, that is to say, the special improvements mentioned in article 18, Laws of 1905, that such bids may be rejected. In all other cases, if such

construction is adhered to, the city would be bound absolutely to accept the first bids, provided they were the lowest, whether, in its mature deliberation and judgment, it thought it desirable or not so to do. This, in an age of growing invention and rapidly expanding scientific knowledge. In the case of a filtration plant where scientific knowledge and accuracy, and the correlation and co-ordination of scientific devices is especially necessary, such a situation is too dangerous for us to believe that it was ever intended.

It is immaterial whether the legislature intended that the word "act" should be used in its strict and usual sense, or as a synonym for the word "article." Even if we concede the strict and usual meaning, the intent of the legislature is just as clear. Where, indeed, in the whole of the act, is there to be found any idea, suggestion, or requirement that estimates of probable cost and competitive bids should be made or required in the case of buildings such as filtration plants? And this even though we write the word "act" in big letters. The only sections which relate to bids or estimate of costs are § 132, which provides that "the city auditor shall, on or before the 15th day of March in each year, advertise in the official newspaper of the city twice, once in each week for two consecutive weeks, for bids for the construction of the various kinds of *sidewalks* in the city during the ensuing year, in accordance with the specifications of the ordinance provided for in § . . . [130 of this act], and such bid shall be received and opened, and, if accompanied by a check and bond as hereinafter provided, such contract shall be awarded to the lowest bidder, at the regular meeting of the city council in April, and contracts may be awarded to different bidders for the different kinds of *sidewalks* required." This section certainly cannot be made to refer to anything but sidewalks. Section 142 provides: "When the city council shall deem it necessary to construct or alter any sewer, or to open, widen, extend, pave, repave, macadamize, or curb *any street, alley, avenue, lane, highway, or other public grounds* within the city limits, or to extend, relay, or replace *any water mains,* the city council shall direct the city engineer, or in case the city has no competent city engineer, shall employ a competent engineer to prepare plans and specifications for *such work,* including the grading of the street if not already established, and all details of the work to be done, and make an estimate of its probable cost, which

plans, specifications, and estimates shall be approved by resolution of the city council, which approval shall be deemed to establish the grade of the street as shown in such plans and specifications, if the grade of the street has not previously been established by ordinance. In case the improvement shall consist in *paving* or *repaving* any street, alley, or public place, the city council may require such plans, specifications, and estimates to be made of such different kinds of pavement as they may deem advisable. Such plans, specifications, and estimates shall be the property of the city, and be filed in the office of the city auditor, and remain on file in his office subject to the inspection of all persons." Where is there in this section any reference to anything but *sewers, pavements, macadamizing, curbing* or the extension and building and replacing of *water mains?* Section 143 provides: "After the plans, specifications, and estimates mentioned in the preceding section shall have been filed in the office of the city auditor, and approved as provided in the *preceding* section, the city council shall by resolution declare *such* work or improvement (except the construction or alteration of sewers) necessary to be done according to such plans and specifications, as filed in the office of the city auditor; and in case of paving, such resolution shall designate the kind of pavement proposed to be constructed, and refer intelligently to the plans, specifications, and estimates therefor; which resolution shall be published twice, once in each week for two consecutive weeks in the official newspaper of the city, and if a majority of the owners of property, liable to be specially assessed therefor, shall not, within thirty-five days after the first publication of such resolution, file with the city auditor a written protest against such improvement, then the city council shall have power to cause such improvement to be made according to such plans and specifications, and to contract therefor, and to levy and collect assessments as hereinafter provided, and all such work shall be let by contract to the lowest bidder therefor." And § 145 provides (for § 144 merely provides for further proceedings in case of a protest, and is unimportant) that "the city council shall *then* cause proposals for *said work* to be advertised for in the official paper of such city, twice, once in each week for two successive weeks, which advertisement shall specify the work to be done, according to the plans and specifications therefor on file in the auditor's office, and shall call for bids therefor upon a basis

of cash payment for *said work,* and state the time within which such bids will be received, and within which *such work* is to be completed. Bids for *such work* shall be forwarded to the city auditor of such city, securely sealed, so as to prevent their being opened without detection, and shall have indorsed upon the outside thereof a statement of what work such proposals are for. Such bids shall be opened by the city council at the expiration of the time limited," etc. Where is there, in these provisions, any reference to anything else except *sewers, paving, macadamizing, and curbing?* Section 146 provides that "each bid for any work to be done under the provisions of this article shall be accompanied by a certified check, in case of sidewalks for the sum of $50, and in the case of other work for the sum of $500." This provision cannot possibly be applicable. The amount is absurdly inadequate. In the case at bar a check for $6,000 was deposited.

The same is true of § 147, which requires that "each bid for any *such work* shall also be accompanied by a bond running to the city," etc. The only other provision is § 149, which provides that "all contracts entered into for any work provided for in this article shall be entered into in the name of the city, and shall be executed on the part of the city, by the mayor thereof, and countersigned by the auditor, with the corporate seal of the city affixed, and when signed by the contractor shall be filed in the office of the city auditor. Such contract shall require the work to be done thereunder to be done pursuant to the plans and specifications therefor on file in the office of the city auditor. . . . Each contract so entered into shall state the time on or before which such work must be completed, and *must state from what fund the amount to be paid thereon by the city is to be paid, and that the consideration of such contract is payable only in warrants drawn on such fund,* and *that such city assumes and incurs no general liability under such contract."* This provision was clearly not intended to apply to contracts of the nature before us. Nowhere in the act is there any provision for paying for such buildings by means of a special assessment. Nowhere is there *any provision for any fund,* and nowhere is there any provision that in such cases the *city cannot be held to assume and incur any general liability.* The section in question, indeed, must relate solely to improvements which are to be paid for by means of special assessments. This is made clear by § 151, which follows,

and which provides, among other things, that *"all special assessments levied under the provisions of this act shall constitute a fund for the payment of the cost of the improvement,"* etc.

Article 18, Laws of 1899, which was repealed by the present act and for which the present act was practically substituted, itself contained no provision to the effect that waterworks should be built by any system of competitive bidding. It is true it provided (§ 2312) for a special assessment of adjacent property in certain instances, but even then there was no provision for such competitive contracts. The present act repeals § 2312, and there seems to be no provision for even the payment of a portion of such waterworks by special assessment. What the present act really accomplishes is to group and make uniform the special assessment systems in regard to *sewers, paving, and water mains,* and bids and contracts in relation thereto, all of which, in chapter 28, Laws of 1899, were treated of in separate and distinct articles, and had their own peculiar provisions. There appears, indeed, never to have been any time when filtration plants and works of such nature were required to be built by contracts let by a system of competitive bidding, and, as we have before said, even under the old statutes, when a portion thereof seems to have been permitted to be paid for by special assessments, there seem to have been no mandatory provisions for the letting of the contracts on such basis, competitive bidding being only required in cases of sewerage and paving. (See chapter 28, Laws of 1899.)

We realize fully that it has generally been the policy of this state to require that all public contracts shall be let by competition. We realize that competition is generally required in the case of townships (§ 307), in the case of counties (§ 2421), in the case of school districts (§ 909), and even by chapter 62 itself, in ¶ 73, § 47, in the case of "paper, printing, stationery, blanks, fuel, and all supplies needed for the use of the city." These special enumerations, however, which do not include buildings of the class or nature under consideration, are under the familiar rule of *"expressio unius est exclusio alterius,"* argue against, rather than for, the requirement in this particular case. We may be personally of the belief that to require such bids generally, and in the case of all municipal contracts, would be sound public policy. This personal opinion of ours, however, even though honestly en-

tertained, does not justify us in judicially legislating and in requiring what the legislature has not required. This should be especially so in the case at bar, where such a judicial requirement would perhaps result in depriving a city of 15,000 inhabitants of a much-needed filtration plant, in endangering the public health, and in subjecting public officials who are responsible for the contract and against whom no charge of fraud or dishonesty has been made or imputed, to a possible action for damages. This is a court of equity, and not a legislative body. If the statute needs amendment, it is for the legislature, and not for us, to provide the remedy.

This view of the case makes it unnecessary to consider the other propositions advanced, which are all dependent upon it.

The judgment of the District Court is affirmed.