BISMARCK TRIBUNE COMPANY, Appellant, v. F. J. JOHNSON, County Auditor of Burleigh County, North Dakota, EDWARD J. PATTERSON, GRANT PALMS, C. L. MALONE, C. A. SWANSON, and B. O. WARD, County Commissioners of Burleigh County, North Dakota, Respondents.

(188 N. W. 308.)

**Counties — county auditor is not required to secure competitive bids for printing for primary election supplies.**

In the printing of election supplies for a primary election the mandatory duty is not imposed upon the county auditor to secure competitive bids, pursuant to chap. 49, Laws of 1921.

Opinion filed May 23, 1922.

Action in District court, Burleigh county, *Nuessle,* J. Plaintiff has appealed from an order sustaining a demurrer to the complaint.

Affirmed.

*E. T. Burke,* for appellant.

*F. E. McCurdy,* for respondents.

BRONSON, J. The complaint alleges, among other things, that the plaintiff is a domestic corporation and a taxpayer; that on June 28th,

1922 a primary election will be held in Burleigh County for the selection of candidates for county and state offices to be elected at the general election in November following; that it is the duty of the county commissioners to advertise for competitive bids for printing election supplies; that the defendant county auditor has pretended to make a contract with the Knight Printing Co. for printing election supplies without any competitive bids or advertising therefor, and without any agreement as to the price to be charged therefor; that the amount to be paid will exceed $300.00 and will be paid contrary to the provisions of § 3296 C. L. 1913; that plaintiff submitted a bid in writing covering all such election supplies; that it has complied with the provisions of § 3296 C. L. 1913 as amended and is the lowest bidder for all such work. The complaint prays that the defendants be restrained from recognizing the contract of the Knight Printing Co. and from paying any moneys thereupon.

The defendants interposed a demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer. The plaintiff has appealed.

The sole question presented, all procedural or other objections being waived, is whether chap. 49, Laws of 1921 (§ 3296, C. L. 1913, amended), requiring county commissioners to advertise for competitive bids, applies to printing or furnishing of election supplies. Chap. 49, Laws of 1921, provides (concerning the erection of county buildings) that the county commissioners shall make contracts therefor after advertising for bids; that the provisions of this section shall apply to all contracts for fuel, stationery, and all other articles for the use of the county, or labor to be performed therefor, when the amount to be paid for the same during any year exceeds $300.

The prototype of this statute is first found in Territorial Laws, in § 45 of chap. 21, Levisee's Political Code, relating to counties and county officers. This section 45 requires the county commissioners to advertise for bids in the erection or repair of county buildings. It was amended by chap. 31 of the territorial laws of 1887, requiring the provisions of such section to apply to all contracts for fuel, stationery, and all other articles for the use of said county, or labor to be performed therefor, when the amount to be paid therefor exceeds the sum of $100. It will be noted that chap. 49, Laws of 1921, has amended the territorial laws in this respect by changing the limit of $100 to $300.

Section 957, C. L. 1913, provides that, at all general or special elections for county, state, etc., officers, all ballots cast shall be printed and distributed at public expense as thereinafter provided; that the printing of ballots and cards of instructions for the electors in each county shall be a county charge, and for municipalities a municipal charge, the payment of which shall be provided for in the same manner as other county and municipal expenses.

Section 958, C. L. 1913, provides that, except as otherwise provided in this chapter, it shall be the duty of the auditor of each county to provide printed ballots for each election for public officers, etc.

Section 964, C. L. 1913, provides that the county auditor shall, at least five days before any election, have the ballots printed, etc.

Section 966, C. L. 1913, provides that the county auditor shall cause to be printed on cards full instructions to the electors, etc.

Section 968, C. L. 1913, provides that the county commissioners shall provide, at county expense, suitable ballot boxes for each election precinct in the county.

Sections 957, 958, 964, and 966 find their prototypes, in chap. 66 of the Laws of 1891. This chapter enacted the so-termed Australian Election Law for the selection of public officers at elections  Through this law the auditor in each county was made a part of the election machinery, with certain specific duties imposed concerning elections. Under this act no duties were specifically assigned to the county  commissioners. Pursuant to § 496, Revised Codes of 1895, the duty was imposed, for the first time, upon the county commissioners to provide suitable ballot boxes for each election precinct at county expense. The duties imposed upon county auditors under such Australian Election Law have not been substantially changed since its enactment. It is apparent that under the Australian Election Law (chap. 66, Laws of 1891) the mandatory duty was not imposed upon the county auditor to make the county commissioners a part of the election machinery in the printing and preparation of ballots for election purposes, so as to require the printing of ballots upon competitive bidding. It is further evident that subsequent amendments and legislation have not changed the powers and duties possessed by the county auditor under the Australian Election Law with respect to the printing and preparation of ballots for election purposes. In the absence of specific legislative direction, accordingly, the powers and the duties of the county auditor concerning the printing of election supplies remains now as it did then under the Australian Election Law. It may

be noted that the provision in chap 49, Laws of 1921, requiring the sub-
mission of competitive bids, has always referred, since territorial days,
to powers of county commissioners.   For instance, county commissioners
have the power to erect or repair county building (§ 3295, C. L. 1913).
to construct and repair bridges (§ 3275, C. L. 1913).   To such powers,
the provisions of said chap. 49 apply.   The legislature, however,  has
seen fit to impose upon the county auditor, not upon the county commis-
sioners, the mandatory duty to prepare, print, and   distribute  election
ballots.   Whether or not this is wise legislation rests with the legislature,
and not with the courts.

In Knight v. County Com'rs of Cass County, 14 N. D. 340, 103 N.
W. 940, this court held that the purchasing committee, consisting of the
county auditor, county treasurer, and the chairman of the board of coun-
ty commissioners, authorized under § 3275, C L. 1913 (then § 1906, R.
C. 1899), to furnish blank books, stationery, and other things, necessary
for the performance of the duties of county officials, were not bound,
pursuant to the provisions of said chap 49 (then chap. 59, Laws of 1899)
to furnish blank books, blanks, and stationery upon competitive bids; that
it was only for such articles as were purchased by the board of county
commissioners that contracts must be let to the lowest bidder; that the
purchasing committee was not included within the restrictions of § 1925,
R. C. 1895 (now chap 49, Laws of 1921).   It is true that in 1899 the
legislature struck out the word "stationery" in the stated provision in
chap. 49, but it was.reinstated by the legislature in 1905.   Chap. 72, Laws
of 1905.   Accordingly in that case this court determined that the require-
ment of a competitive bid applied only to powers exercised by county
commissioners, and not to a power possessed by a purchasing committee.
Furthermore, chap. 49 does not include in its terms election supplies or
ballots unless it be included in the phrase "all other articles for the use
of the county."   Election supplies, however, concern state officials as
well as county officials.   They  serve  a state use as well as a county
use.   It would be a strange construction to read into such phrase "elec-
tion supplies," and thus to impose upon the county   commissioners   a
specific power concerning elections which the law from its inception has
not attempted so to prescribe.   Although, in our opinion, there appears
no objection to the county auditor exercising his discretion by requesting
the county commissioners to make a contract for the printing of election
supplies from competitive bids, nevertheless there is no statutory require-
ment making it mandatory upon him so to do.   In the absence of such

statutory mandate, competitive bids are not required. Braaten v. Olson, 28 N. D. 235, 243, 148 N. W. 829; Price v. Fargo, 24 N. D. 440, 139 N. W. 1054. Furthermore, some 10 years ago the executive department construed the question presented consonant with our conclusions. See opinion of Ass't. Atty. Gen. Young on Election Supplies, April 25, 1912. Op. Atty. Gen. 1911-12, p. 131. The construction presented by the executive department upon such question is entitled to consideration by this court. See O'Laughlin v. Carlson, 30 N. D. 213, 218, 152 N. W. 675. The order of the trial court is affirmed, with costs.

BIRDZELL, C. J., and CHRISTIANSON, ROBINSON, and GRACE, JJ., concur.