THE STATE, EX REL. WM. HUSE & SON, v. THE BOARD OF COUNTY SUPERVISORS OF DIXON COUNTY.

1.  **Taxes:** PUBLICATION OF NOTICE OF SALE: POWER OF COUNTY BOARD. The power and duty to designate the newspaper in which the county treasurer shall give notice of the sale of real property on which the taxes levied for the previous year shall remain unpaid, as required by section 109 of chapter 77, Comp. Statutes, is, with certain limitations, vested in the board doing the county business, in each county respectively.

2.  **County Board:** PUBLISHING PROCEEDINGS. The only limitations upon the power and duty of the county board of any county to cause to be published, at the close of each annual, regular, or special meeting of such board, a brief statement of the proceedings thereof, in one newspaper of general circulation, published in the county, or to in like manner publish their proceedings upon the equalization of the assessment roll, is, that such publication shall not be required unless the same can be done at an expense not exceeding one-third of the legal rates for advertising notices.

3.  ——: ——: MANDAMUS. There being no law making it the duty of a county board to let by contract to the lowest bidder the printing and publishing of the delinquent tax list, or the proceedings of such board, a mandamus will not be issued from this court to compel such action by them.

ORIGINAL application for mandamus.

*W. E. Gantt* and *Barnes Brothers,* for relators.

*Marquett, Deweese & Hall,* for respondent.

COBB, J.

This is an original application for a writ of mandamus to compel the board of supervisors of Dixon county to award to plaintiffs the contract for doing the printing of said county for the year 1888, and for publishing the delinquent tax list for the year 1887.

The facts set up in the application show that plaintiffs are a firm of printers and publishers, doing business in Dixon county. That as such partners they are proprietors of the *Northern Nebraska Journal*, a newspaper having a general circulation therein; that on the 1st day of December, 1887, the county clerk of said county published in the Ponca *Democrat*, a newspaper having a general circulation therein, estimates of books, blanks, and stationery for the use of said county for the year 1888, inviting bids for the same; also in the same notice invitation for bids for doing the county printing, including the publishing of the delinquent tax list for the year 1887; that said notice provided that bids would be received, and, by the terms of the same, parties were invited to bid for the different classes and items contained in said notice. That the cost of furnishing said books, blanks, and stationery exceeds the sum of $200; that on the 31st day of December, 1887, plaintiffs filed with the county clerk of said county their bid in writing, by which plaintiffs offered to do all the county printing called for in said notice, and all miscellaneous printing of whatsoever kind required by said county for the year 1888, for the sum of $00.25, and to publish the delinquent tax list for the year 1887 for the sum of 10 cents a description for lands, and 5 cents a description for lots. A copy of said bid is attached to the petition and made part thereof, and it is shown in said petition that plaintiffs are the proprietors and publishers of the *Northern Nebraska Journal*, a newspaper of general circulation in said county, and in which paper plaintiffs propose to do said printing; that on the 31st day of December, 1887, one S. K. Bittenbender, in response to said notice, put in a bid, offering to furnish books, blanks, and stationery, to publish supervisors' proceedings, road notices, and the delinquent tax list; that said S. K. Bittenbender offered to print the supervisors' proceedings and road notices without consideration, and to publish the delinquent tax list at

legal rates; that the bid of said Bittenbender is to do the said printing in the Ponca *Democrat*. A copy of said bid is set out in full in the petition. Petition further alleges that said Bittenbender, in his said bid, entirely fails to classify the different classes and items to be furnished; that said Bittenbender is neither the owner nor publisher of any newspaper whatsoever, as is shown on the face of said bid, and that he has no newspaper under his control; that the Ponca *Democrat* is published and controlled by Nelson & Freyermuth, and not by said Bittenbender; that plaintiffs' bid was the best and lowest bid made; that plaintiffs are competent and responsible, and at time of filing said bid furnished a good and sufficient bond, which was filed by the county clerk; that said board of supervisors at its first meeting in January opened all bids so filed; that said board failed and refused, on demand being made, to award said bid to plaintiffs, but rejected their bid and let the same to said S. K. Bittenbender for a greater amount than the bid by plaintiffs.

Plaintiffs therefore pray that a peremptory writ of mandamus may issue commanding the defendants to accept the bid of plaintiffs and award to them the contract for said printing, and furnishing blanks, handbills, etc., and for costs.

The points relied on by plaintiffs, and which are shown by the petition, are:

*First.* That they are the lowest and best bidders, and have in all things complied with the notice inviting bids, and the law on which the notice is based.

*Second.* That the bid of Bittender is void on its face, for the reasons: 1st. That the same does not classify the items furnished, in the manner required by the notice, and by section 150, Art. I., Ch. 18, of the Compiled Statutes of 1887, governing the same. 2d. That it is shown on the face of bid that Bittenbender is not the owner, publisher, nor has he under his control any paper in which to do said work.

*Third.* That his bid is void for want of consideration.

*Fourth.* That he proposes to do said work in the Ponca *Democrat,* and shows on the face of his bid that he is not the owner, publisher, nor has he under his control or management said paper.

*Fifth.* That the contract for doing the public printing of a county can be let only to a person or firm who are the owners and publishers, or have under their control a paper of general circulation in the county in which the printing is to be done.

The principal reasons assigned by the defendants for refusing to let the contract to plaintiffs were, that the legislature having fixed the fees for publishing the delinquent tax list at 20 cents a description for lands and 10 cents a description for lots, that it could not be let for a less sum.

There was a general demurrer by the re pondents.

Mandamus is doubtless the appropriate remedy for the enforcement of an official duty which a public officer or board owes to the public or an individual, and refuses to perform. The first question presented by this application is, does the respondent, board, owe a duty to the relator? Underlying this is the question whether, under the law, it is the duty of the county board to let the county printing by contract to the lowest bidder? We are cited to no provision of law, nor do I know of any, prescribing such duty. Relators, in their brief, tacitly admit the absence of any statute prescribing such duty, but claim that the respondent, board, are estopped of such defense by having published a notice inviting bids for the doing of said work. But it does not appear from the petition of relators that the county board have published, or caused to be published, any notice calling for such bids. It does appear that such notice has been published by the county clerk. And it further appears, from the said petition, that the notice for such bids so published by the county clerk was contained within the advertisement, required to be pub-

lished by him in one newspaper, of the estimates of the books and blanks and stationery required for the use of the county officers, etc.

Sections 149, 150, 151, and 152, of chapter 18, Comp. Stats., make it the duty of the county cler , in all counties where the cost of furnishing the officers with books, blanks, and stationery shall exceed the sum of $200 per year, on or before the first day of December of each year, to prepare separate estimates of the books and blanks and stationery required for the use of the county officers during the coming year,   *   *   *   and during the first week in December to publish a brief advertisement in one newspaper published in his county, stating the probable gross number of each item of books, blanks, and stationery required by such county during the year following the first day of January next ensuing, and inviting bids therefor, etc.   These sections also make it the duty of the county board to let the supplies for such purposes, in separate contracts, to the lowest competent bidder, who shall give bond, etc.

It appears that the county clerk, in advertising for bids for furnishing supplies of books, blanks, and stationery, as required by the provisions of the above sections, also called for bids for printing.   In publishing such advertisement the county clerk acts, or should act, under the law, and not under the direction of the county board, to whom he was in no manner responsible, and who were in no manner responsible for the manner in which he performed such duty.   It was his duty to advertise for bids for books, blanks, and stationery, but it was not his duty to advertise for bids for printing or publishing.   Having made such unauthorized publication of notice for bids for printing, the county clerk is probably estopped to deny the validity of such call for bids, but the county board certainly are not. The statute, by various provisions, makes it the duty of county treasurers, the county board, and other county officers, to make publication of certain notices and other

matters, but I think no provision of statute imposes it upon the county board, as an official duty, to contract for the printing and publication of such notices or other matter, with the lowest bidder or otherwise. And yet the legislature has not been unmindful of the interest of the tax-payers of the several counties in that regard.

Section 109 of chapter 77 of the Compiled Statutes, which provides for the sale, on the first Monday of November of each year, of all lands and lots on which the taxes for the previous year shall remain unpaid, provides that the county treasurer shall give notice of such sale by publication thereof once a week for three consecutive weeks, commencing the first week in October preceding the sale, in a newspaper in his county having a general · circulation therein; which newspaper shall be designated by the board of county commissioners," etc.

The said section further provides that: "The treasurer shall add to each description of land so advertised the sum of twenty cents, other than town lots, and for each town lot the sum of ten cents, to defray the expenses of advertising, which sums shall be added to the amount due on said land or lot for taxes, and collected in the same manner as the taxes."

The effect of these provisions is to impose the duty upon the county board of designating a newspaper of the respective county, possessed of certain prescribed qualifications, in which to make such publication. Also to create a fund out of which to defray the expenses thereof. Such newspaper must be "in his," the county treasurer's, "county," and "having a general circulation therein." Otherwise its designation is left with the county board as·a matter of official discretion. As to the rate of compensation to be made for such publication, that also is a matter of discretion on the part of the board, and of bargain and contract by them with the publisher of such designated newspaper, within the limit of the fund thus created. But it was

doubtless the judgment of the legislature that the sum provided to be added to the amount due for taxes on each tract and lot, respectively, to defray the expenses of such publication, is but a fair rate of compensation therefor. Were there any doubt as to this, such doubt is set at rest by the consideration of the fact that the statute in relation to fees, Chap. 28, Sec. 17, prescribes as printers' fees "for publishing list of lands upon which taxes are delinquent, each description, twenty cents; lists of town lots, on each description, ten cents."

Section 25 of chapter 18, Comp. Stats., prescribes, among other duties of the county board, as follows: "To cause to be published, at the close of each annual, regular or special meeting of the board, a brief statement of the proceedings thereof in one newspaper of general circulation published in the county, and also their proceedings upon the equalization of the assessment roll; *Provided*, That no publication in a newspaper shall be required unless the same can be done at an expense not exceeding one-third of the legal rates for advertising notices."

Section 25 of chapter 18, Comp. Stats., prescribes among other duties of the county board, as follows: "To cause to be published, at the close of each annual, regular or special meeting of the board, a brief statement of the proceedings thereof in one newspaper of general circulation published in the county, and also their proceedings upon the equalization of the assessment roll; *Provided*, That no publication in a newspaper shall be required unless the same can be done at an expense not exceeding one-third of the legal rates for advertising notices."

Section 17 of chapter 28, Comp. Stats., said chapter being devoted to the subject of "Fees," provides as follows: "For printing and publishing legal advertisements in newspapers, as follows: Each square of ten lines, for the first insertion one dollar. Each subsequent insertion, for each square of ten lines, fifty cents," etc.

Here we have a limitation upon the duty of the county board to publish statements of their proceedings, to-wit: that it can be done at an expense not exceeding 33⅓ cents per square. No method is prescribed to them for ascertaining whether it can be done at such rates or not. The conclusion, therefore, logically follows that the board are left to their own sense of official duty and responsibility in selecting their agents for publishing the statements of their proceedings, within the limits prescribed as above stated.

The relators having failed to establish their right to the action on the part of the county board, as claimed in their petition, a mandamus to enforce such action must be denied.

WRIT DENIED.

REESE, CH. J., concurs.

MAXWELL, J., dissents.