WYMAN ELLIOT *vs.* MINNEAPOLIS CITY *et al.*

Submitted on briefs Oct. 25, 1894.　Affirmed Nov. 15, 1894.

No. 8894.

Contracts by Municipal Corporations.

Where there is neither fraud nor abuse of its discretionary powers, a municipal corporation may award contracts for the purchase of fuel for the use of the city without letting them to the lowest bidder, if the municipal charter does not prescribe the mode of awarding and entering into such contracts, and where such contracts are otherwise made within the scope of its corporate powers.

The manner of awarding contracts rests in the discretion of the City Council.

There is no provision in the city charter of the city of Minneapolis requiring contracts for the purchase of fuel to be awarded to the lowest bidder. *Held*, that the manner of awarding such contracts rests in the discretion of the city council, subject, however, to the rule of law that such power is not unlimited, and that if fraud enters into such contracts, or the council abuses its discretionary powers in making such awards, the contracts may be impeached therefor.

Facts proved show good faith in purchasing fuel for the city.

While corporate funds and corporate property are public trusts, and the fraudulent exercise of corporate power by a city council, whereby such

property and funds are misapplied, would be illegal and void, yet, *held*, that no such facts appear in this case, and the power exercised by the city council of the city of Minneapolis in awarding the contracts for the purchase of fuel for the use of the city does not appear to be tainted with fraud, nor does it appear that it abused its discretionary power in so doing.

Appeal by plaintiff, Wyman Elliot, from an order of the District Court of Hennepin County, *Robert D. Russell*, J., made March 24, 1894, denying his motion for a new trial.

The plaintiff, a resident taxpayer of the City of Minneapolis, commenced this action November 3, 1893, against that city, William H. Eustis, mayor, W. G. Nye, comptroller and Charles F. Haney, clerk of the city, to restrain defendants from executing and delivering to Goodnow & Lawther a contract for the purchase of wood and coal for the city pursuant to an award made by the common council. The defendants answered and the issues were tried March 3, 1894. Findings were made and judgment ordered for defendants. Plaintiff moved for a new trial and being denied he appeals.

*John M. Rees*, for appellant, cited *United States* v. *Kirby*, 7 Wall. 482; *United States* v. *Doherty*, 27 Fed. Rep. 731; *Rose* v. *Stuyvesant*, 8 Johns. 426; *In re Holbrook*, 99 N. Y. 539; *Great Western T. Co.* v. *Loomis*, 32 N. Y. 127.

*David F. Simpson*, for respondent, cited *Starkey* v. *City of Minneapolis*, 19 Minn. 203; *Burgess* v. *Jefferson*, 21 La. An. 143; *Yarnold* v. *City of Lawrence*, 15 Kan. 126.

BUCK, J. The city of Minneapolis, desiring to purchase fuel for the use of the city, advertised for bids for furnishing such fuel. Several different bids were received, among them being those of the Northwestern Fuel Company, the Pioneer Fuel Company, and Goodnow & Lawther.

The total amount of the bid of each of the three bidders above specifically referred to, to wit, the Pioneer Fuel Company, the Northwestern Fuel Company, and Goodnow & Lawther, correctly computed from said schedule of bids, is as follows:

| Northwestern Fuel Company. | Pioneer Fuel Company. | Goodnow & Lawther. | |
|---|---|---|---|
| $9,282 50 | $8,919 00 | $8,685 00 | Fire department. |
| 175 00 | 159 00 | 165 00 | Bridges. |
| 2,705 00 | 2,763 00 | 2,810 00 | City hall. |
| 1,356 25 | 1,292 25 | 1,255 00 | Police department. |
| 910 00 | 896 00 | 920 00 | Sewers. |
| 185 00 | 169 00 | 165 00 | Municipal court. |
| 145 00 | 148 50 | 152 50 | Quarantine hospital. |
| $14,758 75 | $14,346 75 | $14,152 50 | |
| 4,400 00 | 4,250 00 | 4,280 00 | Waterworks. |
| $19,158 75 | $18,596 75 | $18,432 50 | |

The bid of Goodnow & Lawther for all the departments, excepting the waterworks, was $194.25 lower than any other bid received. The fuel for the waterworks department, as shown by specifications, was required to be delivered in car-load lots, and unloaded in bunkers. The fuel for other departments was to be delivered by teams where required.

The city council, by resolution, awarded a contract to the Pioneer Fuel Company for furnishing the fuel for the waterworks department, and awarded to Goodnow & Lawther a contract for furnishing the fuel for all the other departments. Upon such a contract the bid of Goodnow & Lawther was $194.25 less than any other bid.

If the council had so elected, it could, under the specifications, have awarded a contract on each department separately. On bridge department, the bid of the Pioneer Fuel Company was $6 less than that of Goodnow & Lawther; on city hall department, the bid of the Northwestern Fuel Company was $105 less than that of Goodnow & Lawther; on sewer department, the bid of the Pioneer Fuel Company was $24 less than that of Goodnow & Lawther. Under the specifications, the quantities named in the specifications, as shown in the schedule above referred to, "are only proximate, and may be increased or decreased as the various departments may order." In the city hall department, both wood and coal were specified. The bid of Goodnow & Lawther was lower on wood per cord, and higher on coal per ton, than that of the Northwestern Fuel Company. If the requirements of the department should change the proportion between the wood and coal by increasing the amount of wood used, the

fuel would then be furnished for a lower aggregate amount under the Goodnow & Lawther bid than under the Northwestern Fuel Company bid.

The appellant contends that the city council was bound to avail itself of the provision in its specifications allowing it to award contracts to each department separately, and to award the contracts in the department of bridges and sewers and city hall to bidders other than Goodnow & Lawther.

The charter of the city of Minneapolis provides that the city "shall be capable of contracting and being contracted with and have all the general powers possessed by municipal corporations at common law."

We do not find in the charter of the city of Minneapolis any provision for the purchase of fuel which in any way limits or prescribes the mode of making contracts for such purpose, or which defines the manner of awarding contracts for fuel, except, in "all contracts for the expenditure of one hundred dollars or more, public notice shall be given and proposals invited for the same in such manner as the council shall direct."    City Charter, ch. 8, § 5.

The city council did advertise for bids, as thus provided, for furnishing fuel for the city for the ensuing year, and published such advertisement in the Minneapolis Times, a daily newspaper of general circulation in the city of Minneapolis, and received bids for furnishing fuel for the city after such advertisement.    The city reserved the right, in the specifications for the amount and kind of fuel needed, to award the whole of said fuel contracts as a single contract, or to let and award the same separately, as might be deemed for the best interests of the city.    It also reserved the right to reject all bids.

There is no provision in the city charter requiring that the contracts for the purchase of fuel shall be awarded to the lowest bidder. The manner, therefore, of advertising for bids and awarding contracts for the purchase of fuel, must be left, in a great measure, to the honesty, discretion, and good judgment of the city council.

Here each of the bids is quite large in amount, but the difference between them is very small; so much so, that it cannot reasonably be said that there is any badge of fraud in the transaction.

It is conceded that the bidders were all of equal financial ability, and equally able to supply the city with the fuel mentioned in the ad-

vertisement and in the different bids. Where a city council does not abuse its discretionary powers, and does not act fraudulently, if the municipal charter does not prescribe the mode of entering into contracts in purchasing material, such as fuel, for use of the city, it may award contracts without letting them to the lowest bidder, if the contract is otherwise within the scope of its corporate powers. *Yarnold* v. *City of Lawrence*, 15 Kan. 126.

But the power of a city council is not unlimited. However difficult it might be to investigate the motives of the members of a city council in letting contracts, yet whenever they undertake to use their corporate powers fraudulently for their own advantage, or for the benefit or injury of others, such acts are void. Any other rule would be disastrous, and the most salutary doctrine that can be upheld, and which we uphold, as the law, is to allow fraudulent contracts upon the part of a municipal corporation to be impeached.

The corporate property and corporate funds are public trusts, and a fraudulent exercise of the corporate powers, whereby such property and funds are misappropriated, is illegal and void. And so is an abuse of the discretionary powers of a city council relating to such property or funds. Under the charter of the city of Minneapolis, there are certain discretionary powers vested in the city council; but it certainly cannot be inferred or maintained as the law that such powers can be abused, or its funds misapplied, to the injury of the city, and no scheme could be tolerated which embraces an attempt to defraud the corporation of its property; but, as we have said, we do not find any fraud in this case, and no abuse of the city council's discretionary power. Possibly, public interest might be better subserved by placing restrictions in the charter requiring contracts to be let to the lowest responsible bidder, but that is a matter for the legislature to deal with, and not for judicial interference.

The resolution of the city council, passed March 11, 1892, as to the manner of purchasing material for the different departments of the city, we do not regard as in any way prohibiting the bids and awarding the contracts in the manner it did in this case. The resolution itself expressly provides that the purchase shall be made in the manner therein set forth, unless the city council shall otherwise order. This reservation of power enabled the city council to change its

method of procedure in regard to purchasing material and making contracts, not inconsistent with the city charter.

The order denying the motion for a new trial is affirmed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 60 N. W. 1081.)