[No. 17160.   Department One.   November 24, 1922.]

## H. C. BROMLEY et al., Appellants, v. P. J. McHUGH, Respondent.[1]

APPEAL (432)—REVIEW—HARMLESS ERROR—PARTY NOT ENTITLED TO SUCCEED IN ANY EVENT. Errors in ruling on the evidence and instructions are harmless, where the respondent was entitled to the dismissal of the case upon appellant's evidence.

CONTRACTS (6)—OFFER AND ACCEPTANCE—BIDS—RIGHTS OF LOWEST BIDDER. Under a call for bids on the construction of a building which required no deposit of security, the owner is under no obligation to accept the lowest bid, although there was no reservation of the right to reject any or all bids, especially where the intention was clearly expressed to let a contract to the "successful" bidder.

SAME (6). The lowest bidder on the construction of a building is not entitled to the contract, where there was no formal acceptance, but the same was rescinded and new bids called for on different plans, upon which such bidder submitted new bids.

SAME (6). There was no acceptance of bids for the construction of a building where new bids were demanded and furnished.

PRINCIPAL AND AGENT (32)—AUTHORITY OF AGENT—CONTRACTS OF ARCHITECT. An architect has no authority to accept bids called for by the owner, in the absence of express authority.

Appeal from a judgment of the superior court for King county, Tallman, J., entered December 19, 1921, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Affirmed.

*Willett & Soule,* for appellants.
*Stratton & Kane,* for respondent.

MACKINTOSH, J.—These are the facts in this case: The respondent, desiring to have built for him a building, had his architect, one Blair, prepare plans and specifications to be submitted to contractors for their bids. In the specifications the bidders were required to put up a certified check for five per cent of the

[1] Reported in 210 Pac. 809.

amount of their bids. In the specifications there was no reservation to the owner of the right to reject any and all bids; they did contain, however, the provision that the *"successful contractor"* should be required to furnish surety bonds, and that the *"successful bidder"* would be required to enter into a contract with the owner five days after the work had been awarded to him, and in the event that "he fails to do so, then the owner or architect, for the owner, shall cash the certified check and the amount accruing therefrom shall revert to the said owner." Six bids were submitted under these specifications, which were opened on Friday, June 4, 1920, at which time it appeared that the appellants had submitted the lowest bid. On that day one of the appellants, being called into the office of the architect, for the first time met the respondent in regard to this building, and was told that their bid was the lowest submitted, but that the amount of the bid was more than the respondent desired or intended to spend in the construction of the building, and that it would be necessary for the appellants to cut down the bid, and the appellants were further told by the respondent that he was going to have other contractors check up the appellants on the new figures.

Thereafter, on June 7, the appellants furnished new figures for the work, based upon the omission from the original plans and specifications of five different portions of the work, and the change of material to be used in two other portions of the work. In the record there appears a receipt signed by the appellants, bearing date of June 7, 1920, for the return to them of their certified check for $3,400, being the check that they had deposited with their bid. Appellants' testimony, however, is that this check was not returned to them until Wednesday, the 9th; but be this as it may, there is no contention by the appellants that,

upon the return to them of the check, they made any protest on its return, but accepted it without comment. The appellants had no other conversation with the respondent in regard to awarding the contract for this building until several days later when they had been advised that the respondent was intending to build the building by day labor, at which time, being Friday the 11th, the appellants presented a formal contract to the respondent for his signature.

Under these facts, the appellants began this suit to recover damages for breach of contract by reason of the respondent's refusal to allow them to erect the building, the theory of the case being that the specifications given to the appellants under which they submitted their bid contained no reservation to reject any and all bids, and that they, being the lowest bidders, were therefore in law entitled to the contract, independently of whether the respondent accepted their bid or not; and that, in any event, they were entitled to damages by reason of the fact that their bid had been actually accepted by the respondent and thereby the contract had been awarded them, and this irrespective of the question of whether the specifications did or did not contain any reservation of the right to reject any and all bids. The jury returned a verdict in favor of the respondent.

Many assignments of error are made concerning testimony admitted or rejected, instructions given and refused, and motions and demurrers passed on. But under the view that we take of the law applicable to the facts it is unnecessary to pass upon these various assignments, for the respondent was entitled to a dismissal of the case upon the appellants' evidence, and therefore the errors assigned become immaterial. *Carroll v. Centralia Water Co.*, 5 Wash. 613, 32 Pac. 609, 33 Pac. 431; *Martin v. Union Mutual*

*Ins. Co.,* 13 Wash. 275, 43 Pac. 53; *Hardin v. Mullen,* 16 Wash. 647, 48 Pac. 349; *Kellogg v. Cook,* 18 Wash. 516, 52 Pac. 232; *Brummett v. Campbell,* 32 Wash. 358, 73 Pac. 403; *Steeples v. Panel & Folding Box Co.,* 33 Wash. 359, 74 Pac. 475; *Denham v. Washington Water Power Co.,* 38 Wash. 354, 80 Pac. 546; *Aris v. Mutual Life Ins. Co.,* 54 Wash. 269, 103 Pac. 50; *Shaw v. Lobe,* 58 Wash. 219, 108 Pac. 450, 29 L. R. A. (N. S.) 333; *McKivor v. Savage,* 60 Wash. 135, 110 Pac. 811; *Blanchard v. Puget Sound Traction, L. & P. Co.,* 105 Wash. 226, 177 Pac. 822. It only becomes necessary, therefore, to discuss the reason for our conclusion that in no event were the appellants entitled to recover.

Taking first the contention that, for the reason the specifications contained no reservation of the right to reject any and all bids, the appellants were, as low bidders, entitled to the contract, no matter whether it was formally accepted or not. Appellants must concede that the law is well settled that, where there is no provision in the specifications or call for bids for the deposit of security to ensure the acceptance of the contract by the bidder, the owner is under no obligation to accept any bid; that, in those cases, the calling for bids is merely a call for offers to contract, and there is no contract until one of the bids is actually accepted. An entertaining question is presented as to whether this rule is changed by the fact that the owner, in calling for bids, requires the posting of security, but this question need not be determined in this case for the reason that the specifications (which here take the place of the call for bids) contain no language subject to the interpretation that the owner intends to let the contract to the *lowest bidder.* As a matter of fact, the intention is very clearly expressed to the contrary, and that the owner, even if

he be compelled to let a contract under this call, is going to let the contract to the *successful bidder*. This intention is clearly expressed by the use at least twice of the word "successful."

Furthermore, even though we might assume that the call for bids in this case, with a provision for the deposit of security, would compel the letting of the contract to the lowest bidder, even in the absence of a formal acceptance, still, the appellants' testimony shows that, assuming such a contract to have existed, it was later rescinded by the respondent. For, at the meeting between them on Friday the 4th, a new bid which called for a building differing materially from that covered by the original plans and specifications was substituted therefor, for which appellants submitted new figures, and that the alterations were not immaterial is evidenced by the fact that the second bid was $6,645 less than the original bid, charging off more than ten per cent of such original bid. It cannot be gainsaid, under these facts, that even though the law might have imposed a contract upon the opening of the lowest bid, that such contract was cancelled and held for naught by both the parties thereto, and that a new bid was called for upon what amounted to a new set of plans and specifications.

Passing to the second ground upon which the appellants claim to be entitled to wage this suit, that is, that their bid was actually accepted, the proof that we have already referred to in considering the other phase of the case—that a new contract was called for on Friday the 4th—disposes of the claim of actual acceptance of the first bid. It is undisputed that the first bid was not actually accepted, for another bid was demanded and furnished. Now the question arises whether this new bid was actually accepted. Waiving the dispute concerning the time of the re-

turn of the check to the appellants, it is still un-contradicted by the appellants that, after Friday, June 4, they never saw the respondent again until the following Friday, and at that time they only saw the respondent for the purpose of making formal presentation to him of a contract, they having already been advised that he did not intend to allow them to construct the building for him. The only acceptance there could have been of the second bid was by the architect, and, under our decisions, the architect is vested with no such authority. We have held that an architect's authority to represent the owner is limited and does not extend to the making of contracts unless that authority is expressly given. In *Schanen-Blair Co. v. Sisters of Charity of House of Providence,* 77 Wash. 256, 137 Pac. 468, we said:

"In the absence of an express contract, or compel-ling facts, it is never held, as a matter of law, that an architect has any implied power to purchase materials or to enter into a contract for or on behalf of the owner. His duties are well defined and well under-stood, and there is nothing pertaining to his engage-ment that is calculated to mislead anyone dealing with him."

In *Sweeney v. Aetna Indemnity Co.,* 34 Wash. 126, 74 Pac. 1057, we quoted the following from 6 Cyc. 29, with approval:

" 'The mere fact that a person is employed as an architect does not constitute such person a general agent of his employer, his powers as agent being limited by the contract entered into between them. Thus, unless specially authorized, he is not entitled to change, alter or modify the contract entered into by the builder and his employer'."

See, also, 5 C. J. 256.

Under these facts and this law, we must conclude that the appellants were without cause of action and

that the respondent was entitled to have the case dismissed. The judgment of the court resulted in a correct determination of the controversy and must be affirmed.

PARKER, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.