### O'DOWD v. WATERS, MAYOR, *ET AL.*

(125 S. E., 644)

1. MUNICIPAL CORPORATIONS—SUBMISSION OF HIGHEST BID FOR LEASE PURSUANT TO ADVERTISEMENT DID NOT CREATE CONTRACT.—Submission of highest bid, in response to city's advertisement for bids for lease of city auditorium, *held* not to create contract entitling highest bidder to specific performance.

2. MUNICIPAL CORPORATIONS—COUNCIL EMPOWERED WITH DISCRETION COULD LEASE PROPERTY FOR LESS THAN OFFER BY OTHER BIDDER.— City Council, having been vested with power to make contracts concerning city property and with full discretion in regard thereto, could, in exercise of such discretion, lease city auditorium for amount less than that offered by other bidder, and Court in taxpayer's action for injunction could not interfere.

Before DENNIS, J., Florence, January, 1924. Judgment reversed and complaint dismissed.

Action by J. M. O'Dowd against W. M. Waters as Mayor, and others as Councilmen, of the City Council of Florence, for specific peformance of alleged contract and for an injunction. From so much of decree as refused specific per-

Note: On remedy of lowest bidder for refusal of authorities to award contract to him, see notes in 26 L. R. A., 707; 30 L. R. A. (N. S.), 126.

formance, plaintiff appeals; and from so much of decree as awarded injunction, defendants appeal.

Defendant's exceptions are as follows: .

"EXCEPTIONS OF CITY COUNCIL

"(1) The Court erred in holding that the defendants had no right to reject the higher and accept the lower bid for the lease of the municipal theatre; the error being that the leasing of such building rested solely within the discretion of the defendants as the City Council and their determination could not be interfered with by the Court without proof that they had acted in bad faith.

"(2) The Court erred in substituting its opinion as to the proper terms of leasing the municipal theatre for the discretion vested by law in the defendants as the City Council, without any proof that such discretion had been exercised arbitrarily or in bad faith.

"(3) The Court erred in holding that, while the plaintiff had no contract with the city, he, as a taxpayer, could enjoin the City Council from accepting other than the highest bid for the lease of the municipal theatre; the error being that a taxpayer has no such right to interfere with the discreton as to the proper handling of municipal property lodged in the City Council by law.

"(4) The Court erred in holding, in effect, that a City Council in leasing municipal property must accept the highest offer therefor, thereby depriving it of the exercise of any discretion in regard thereto, and thus allowing the Court and not the Council to make municipal contracts.

"(5) The Court erred in holding that the refusal of the defendants to accept plaintiff's bid on the ground that it would create a monopoly in favor of plaintiff to the detriment of the citizens of the community was not a valid reason.

"(6) The Court erred in enjoining the defendants from accepting the offer of Messrs. Schnibben & Howard for the lease of the theatre when it was an admitted fact that

the offer had already been accepted and the contract thereby completed, and an injunction would not lie against such completed contract."

*Messrs. Henry E. Davis* and *James M. Lynch,* for appellants, cite: *Offer and acceptance:* 1 Williston on Contracts, Sec. 31, and cases cited; 26 L. R. A., 707; 26 S. C. Eq., 91; 65 S. C., 490; 89 S. C., 73. *Power of municipal corporation to contract:* 2 Dillon Mun. Corp. (5th Ed.), Sec. 771; 26 S. C. L., 323; 30 S. C. L., 385; 33 S. C., 56; 115 S. E., 596. *Corporate power of City of Florence:* 32 Stat., 599, Sec. 1, 8; 44 S. C., 319. *Authority of Courts to interfere with discretionary powers:* 75 S. C., 549; 35 S. C. L., 306; 35 S. C. L., 241; 48 S. C., 570; 66 S. C., 194; 72 S. C., 1; 1 Dillon Mun. Corp. (5th Ed.), Sec. 282; 22 Cyc., 889; 113 Fed., 560; 34 Am. Rep., 500; 44 N. E., 760; 39 Fed., 723; 50 S. E., 122; 2 Dillon, Sec. 811. *Taxpayers right to maintain action:* 75 S. C., 549; 115 S. E.; Note 26 L. R. A., 711; 28 Cyc., 630. *Injunction:* 1 High, Injunc., Sec. 1; 4 Pom. Eq. Jur., Sec. 1337; 14 R. C. L., Sec. 7.

*Mr. Philip H. Arrowsmith,* for respondent, cites: *Municipal corporation:* 115 S. E., 596; Art. XIV of Code; 28 Cyc., 661.

December 10, 1924.

The opinion of the Court was delivered by Mr. Justice Watts.

I do not concur in the opinion of Mr. Justice Cothran: As to the plaintiff's appeal, I think his Honor was correct in finding and holding that the negotiations between him and the defendants did not amount to a contract and that the plaintiff had no cause of action for specific performance. *Wilie v. Price,* 5 Rich. Eq., 91. *Harmon v. Tel. Co.,* 65 S. C., 490; 43 S. E., 959. *Holliday v. Pegram,* 89 S. C., 73; 71 S. E., 367; Ann. Cas. 1913A, 33.

I think the exceptions of the defendant should be sustained on the ground that the City Council of Florence is the instrumentality through which the corporation exercises its powers and performs its duties, and the statute expressly gives to such council plenary authority to act, respecting any subject that shall appear to them necessary and proper for the welfare of the city.

The City Council of Florence is vested not alone with the power to make contracts concerning the property owned by the city, but in addition with full discretion in regard thereto, and under the facts of this case the Court has no right and authority to interfere with this discretion by substituting its opinion for the discretion of the Council. *City Council v. Ahrens,* 4 Strob., 241. *Darlington v. Ward,* 48 S. C., 570; 26 S. E., 906; 38 L. R. A., 326. *Thomasson v. Railway Co.,* 72 S. C., 1; 51 S. E., 443. *Dillingham v. Spartanburg,* 75 S. C., 549; 56 S. E., 381; 8 L. R. A. (N. S.), 412; 117 Am. St. Rep., 917; 9 Ann. Cas., 829. *Jones v. Camden,* 44 S. C., 319; 23 S. E., 141; 51 Am. St. Rep., 819. *Haesloop v. City Council of Charleston,* 123 S. C., 272; 115 S. E., 596.

I think the judgment should be reversed and complaint dismissed.

A majority of the Court having concurred in this opinion, the judgment of the Circuit Court is reversed and complaint dismissed.

Messrs. Justices Fraser and Marion concur.

Mr. Acting Associate Justice B. A. Morgan concurs in part.

Mr. Chief Justice Gary did not participate.

Mr. Justice Cothran (dissenting): Action by the plaintiff, individually and as a citizen and taxpayer of the City of Florence, for the double purpose of compelling specific performance of an alleged contract with the City to lease to him the theatre auditorium, owned by the City, a part of the City Hall, and to enjoin the City from executing

a lease thereof to another party, Schnibben & Howard, whose bid at a lower figure has been accepted. The date of the commencement of the action is September 6, 1923, and on that day, upon the verified complaint, a temporary restraining order, with a rule to show cause, was issued by his Honor, Judge DeVore, returnable before his Honor, Judge Shipp, at Florence, on September 14, 1923. By agreement of counsel the cause was heard on the merits, upon the complaint and exhibits, the return and answer, and a traverse to the return, at the fall term, 1923, by his Honor, Judge Dennis, presiding Judge, who filed a decree dated January 12, 1924, holding that the plaintiff had failed to establish a contract for a lease with the City, and was not, therefore, entitled to a decree of specific performance, but that as a taxpayer he was entitled to relief against the action of the City Council, in accepting the lower bid submitted by Schnibben & Howard, and issued an injunction accordingly. The plaintiff has appealed from so much of the decree as refused specific performance of the alleged contract, and the City Council has appealed from so much of it as awarded the injunction.

The facts underlying the controversy, as best we have been able to gather them from the record for appeal, appear to be as follows:

The City of Florence owns a City Hall, in which building is an opera house, which for many years has been leased by successive City Councils to private persons upon competitive bids, at steadily increasing rentals. In the year 1911, the plaintiff located at Florence for the purpose of operating a moving picture theater, and acquired an unexpired lease of the opera house which ended with that year. He then acquired a lease of it for three years, 1912 to 1914, inclusive, in his own name, at an annual rental of $900. The lease was renewed for three years and eight months, at an annual rental of $1,800. This lease expired in 1919, whereupon the opera house was leased to other parties, Schnibben & How-

ard, for three years, upon competitive bids, at an annual rental of $3,150. This lease was renewed for three years and expires during this year, 1924. In the meantime the plaintiff established his business at another location.

In June, 1923, it appears that a renewal of the lease to Schnibben & Howard, which was to expire in May, 1924, was under consideration by the council; whereupon the plaintiff addressed a communication to the mayor, dated June 22, 1923, protesting against the premature consideration of the matter and expressing his willingness, should it be gone into, to submit a proposition, and insisting that the matter should be conducted under sealed bids as had invariably been the custom theretofore. Receiving no reply, he again wrote the Mayor on June 30th, to the same effect, and offered to pay an annual rental of $5,000.00' upon certain conditions. On July 12th, the Mayor answered the two letters of the plaintiff, stating that "at the next full meeting of the City Council I will present your proposition and advise you." On August 31st, a meeting of the City Council was held, attended by the plaintiff, one of the then lessees, Schnibben, and two others apparently interested. After a discussion of the matter the visitors retired and the City Attorney, by direction of the Council, prepared and mailed to each one of the four a declaration, addressed, "To Whom It May Concern," that the City proposed to lease the opera house for a term of three years, beginning at the expiration of the unexpired lease in 1924, upon certain conditions, and advising that proposals would be received by the City Clerk September 5, 1923. Within the time stated the plaintiff submitted a proposition, under the terms of said declaration, to lease the opera house for a term of three years at $5,304 per annum, payable monthly. The next highest bid was submitted by Schnibben & Howard, the then lessees, at $4,350.

On September 5th, the City Council met, and after consideration of the two bids, decided to accept the bid of

Schnibben & Howard, at $4,350, claiming to have acted in their discretion for the best interests of the City, particularly in preventing a monopoly of the moving picture business by the plaintiff.

The plaintiff then instituted his action, as stated, for the double purpose: (1) As an individual, of obtaining a decree of specific performance of a contract of lease at $5,304; and (2) as a taxpayer, of enjoining the City Council from consummating the proposed lease to Schnibben & Howard at $4,350.

Supporting his demand, as an individual, for specific performance, the contention of the plaintiff is that the call for bids submitted by the City Council, interpreted by its terms in connection with the attendant circumstances, and followed by his submission of the highest bid, amounted to an acceptance of his bid by the City Council, and constituted a contract, enforceable by the Court, for a lease of the opera house for three years at $5,304 per annum.

The general rule, applied to the matter of advertisements or calls for bids on certain work or disposal of property proposed by a municipal corporation, is that the simple call for bids, followed by a submission of the most favorable bid, does not of itself constitute a completed contract; that the bid is simply an offer which creates no enforceable right in the bidder until it has been accepted. Williston on Contracts, § 31. *Spencer v. Harding,* L. R. 5 C. P., 561. *Kingston v. Petch,* 10 Exch., 610. *Topping v. Swords,* 1 E. D. Smith (N. Y.), 609. *State v. Lincoln Co.,* 35 Neb., 346; 53 N. W., 147. *State v. Dixon County,* 24 Neb., 106; 37 N. W., 936. *Anderson v. Board,* 122 Mo., 61; 27 S. W., 610; 26 L. R. A., 707 and note. *McNeill v. Boston Chamber of Commerce,* 154 Mass., 277; 28 N. E., 245; 13 L. R. A., 559. *Erving v. Mayor,* 131 N. Y., 133; 29 N. E., 1101. *Wilie v. Price,* 5 Rich. Eq., 91. *Howard v. School,* 78 Me., 230; 3 A., 657. *Leskie v. Haseltine,* 155 Pa., 98; 25 A., 886. *Price v. Fargo,* 24 N. D., 440; 139 N. W., 1054. *El-*

*liot v. Minneapolis,* 59 Minn., 111; 60 N. W., 1081. *Gantenbein v. Pasco,* 71 Wash., 635; 129 P., 374. *Maeder v. Vanello,* 109 Or., 562; 220 P., 155. *Bromley v. McHugh,* 122 Wash., 361; 210 P., 809.

But there cannot appear any sound reason why, notwithstanding the general rule, a municipality may not, by the broadness of the terms of the call, by the absence of a reservation of the right to reject any or all bids, by its conduct and promises to the bidders, by the attendant and connected circumstances, inducing confidence and action by the bidders, bind itself in advance to accept the most favorable bid and be estopped from relying upon the general rule.

Municipalities as well as individuals are bound to treat those with whom they deal with the utmost fairness and consideration. If, therefore, they have made representations, openly expressed or fairly implied, that on a certain day they propose to let a certain contract to the most favorable bidder, without reservation, and induce action in the confidence of such representations, the most favorable bidder, in all honesty and justice, acquires a right which cannot be denied except in the exercise of a duty of trust which the municipality owes to its citizens. In the absence of such considerations, which should be made plainly to appear, such as his insolvency, financial inability, bad character, or other valid reason, he will have performed his part of the engagement and is entitled to its fruits.

"If under valid advertisement no discretion is reserved to the municipal officers, then it only remains to perform the ministerial function of opening the bids, ascertaining the lowest and complying with formal requisites." 28 Cyc., 662.

In the case of *Anderson v. Board,* 122 Mo., 61; 27 S. W., 610; 26 L. R. A., 707, it is said:

"That binding obligations can originate in advertisements addressed to the general public may be assumed as settled law today. But the effect to be given to such an advertise-

ment as the basis of a contract depends entirely on the intent manifested by its terms. A public proposal of that nature may be so expressed as to need but an acceptance, or the performance of some act by a person otherwise undesignated, to constitute an enforceable legal agreement, while, on the other hand, the proposal may amount to nothing more than a suggestion to induce offers of a contract by others."

It has been held in numerous cases that a statute requiring municipal contracts to be let to the lowest bidder is for the benefit of the municipality, as a protection to the public, and not for the benefit of the bidder; and that the lowest bidder has no right of action, under such a provision, to recover profits which he might have made had his bid been accepted; nor can he enjoin a violation of such statute. 2 Dillon, Municipal Corp. (5th Ed.), § 811. *Colorado Company v. Murphy,* 78 F., 28; 23 C. C. A., 631; 37 L. R. A., 630. But this is a different proposition from that where the municipality has bound itself to accept the most favorable bid. In *McNeil v. Boston Chamber of Commerce,* 154 Mass., 277; 28 N. E., 245; 13 L. R. A., 559, the committee struck out of the call the clause reserving the right to reject any or all bids, and specifically agreed, before the bids were submitted, to award the contract to the most favorable bidder. The plaintiff was such bidder, but the contract was awarded to another. The Court held that he was entitled to damages for the breach.

The question, then, in this and all similar cases, is whether or not in the call for bids, in connection with the attendant circumstances, the City Council intended to and did obligate itself to accept the most favorable bid for the contemplated lease. That such was their intention, and that it was so understood by all the parties concerned, we have not the shadow of a doubt.

For many years previously it had been the custom of the City Council to award the rental contracts upon competitive

bids. The plaintiff had been a tenant of the opera house from 1911 to 1919 at recurrent increased rentals. In 1919 the lease passed out of his hands, upon competitive bids, to Schnibben & Howard, whose bid was only $150 per annum more than the plaintiff's. In June, 1923, the plaintiff learned of negotiations between the City Council and Schnibben & Howard, looking to a renewal of the lease which was not due to expire until May, 1924, nearly a year from that date, and that it was proposed to fix the rental at either $2,700 or $3,600. The City Council admits in its answer that such negotiations were on foot, but denies information or knowledge sufficient to form a belief as to the proposed rental, a matter necessarily within their knowledge. The plaintiff protested against such premature renewal and insisted upon competitive bids as had been the custom, and by which he had been ousted in 1919. He received no answer to this protest and demand. Again he repeated his protest and demand for competitive bids, and expressed his willingness to pay $5,000 rental. He received from the Mayor the assurance that his proposition, which was mainly his demand for competitive bids, would be submitted to Council; at the meeting held on August 31st, attended by O'Dowd, Schnibben, and two other parties apparently interested, the Council decided, ostensibly if not actually yielding to the demand for competitive bids, to issue a call for bids upon a lease for three years. This call addressed; "To Whom It May Concern," was mailed to O'Dowd, Schnibben & Howard, and to the two others, declaring that "the City of Florence proposes to lease the opera house for a term of three years commencing upon the expiration of the present lease in 1924." It set forth the conditions of the proposed lease, and fixed the time limit for submission of bids at September 5th, 9:30 a. m.

It is not a conclusive circumstance, but strongly persuasive of the intention of the City Council to award the contract to the highest bidder, that the call for bids contained no

reservation of the right to reject any or all bids; the fact
that it was issued at the call of the plaintiff for competitive
bids, coupled with the absence of such reservation, could
only mean that they intended, and it was so understood, that
the award was to be made to the most favorable bidder.

The only two bids submitted were those of O'Dowd at
$5,304, and of Schnibben & Howard at $4,350. It does not
appear at what hour of the 5th the Council acted, but when
the time for bids expired at 9:30 a. m. the bids were opened,
and at some time that same day the Council awarded the
lease to Schnibben & Howard at the smaller rental of $4,350.

The return of the City Council alleges that the call for
bids was only a statement of the conditions upon which the
Council would consider an offer to lease the opera house.
The call conveys no such impression, but declares, "the City
of Florence proposes to lease the opera house for a period of
three years," and directs "all concerned" to submit proposals
for the lease by a certain time. Such interpretation is also
inconsistent with the promptness with which they acted upon
the bid of Schnibben & Howard, the bids apparently causing
slight hesitation in their consideration.

In reason and justice the plaintiff was entitled to know
the ground upon which his more favorable bid was rejected.
It does not appear that at the time the Council gave any at
all. In their answer and return they urge no objection to his
financial ability, to his character, or to his capacity to carry
out his contract. They say that the rejection was in the
exercise of their "discretion", a very elastic and undefined
term. In the absence of any facts upon which the exercise of
such discretion was based, the rejection was nothing less
than the exercise of arbitrary power. They do specify that
a lease of the opera house to the plaintiff would create a
monopoly, and that their action was in the interest of the
public who frequent such places of amusement. We fail to
find in the record the slightest evidence of the apprehended
evil. The Council in awarding the lease to O'Dowd would

not attempt to confer upon him the exclusive right to operate picture shows in the City of Florence; they could not do that; there is nothing to show that the plaintiff would continue his present place of business; and if he ran both places, there is nothing to prevent Schnibben & Howard from doing what O'Dowd did when they secured the lease which he had been holding, locate elsewhere. There is nothing to show that the award to O'Dowd would prevent any other man from opening a picture show elsewhere. There is no possible ground for the apprehension that an award to O'Dowd would create a monopoly in the picture show business in the City of Florence, and, in our opinion, the alleged reason, manifestly an afterthought, is without the slighest support.

Mr. Dillon says (Volume 2, § 811) :

"But in order to give the action of the board or officers any legal effect, they or it must exercise jurisdiction and make a determination based upon some facts. If the board, intrusted with the duty of awarding the contract, refuses to accept the lowest bid for work or supplies, there must be some facts tending to show that it is not that of a responsible bidder, or there must be at least some claim to that effect. An arbitrary determination by such a body to accept the highest bid, without any facts justifying it, cannot have the effect of a judicial determination and must be designated as a palpable violation of the law."

In 28 Cyc., 663, it is said:

"But under all circumstances the lowest bidder has the right to fair consideration and treatment; and an award of a contract to another by corruption, by collusion, or for any other than legal and just consideration, will be voidable at his option, and action will lie in his favor to enforce his contract."

It is a striking circumstance that, at the meeting of August 31st, the plaintiff, who had persistently demanded a letting upon competitive bids and had placed the Council in a po-

sition where they could not renew Schnibben & Howard's lease at $2,700 or $3,600, and doubtless thereby became *persona non grata,* declined to submit a bid at all, after competitive bids had been determined upon, until he was assured that his bid would be considered upon the same basis as Schnibben & Howard's. Was it so considered? If his bid was to be rejected upon the ground that he was already operating a picture show at another location, that was a fact which the Council knew as well when they gave the assurance on August 31st, as they did on September 5th, when they rejected it on that ground, as they now claim that an award to him would create a monopoly. The assurance manifestly was not maintained.

It follows, therefore, that the plaintiff is entitled to a decree of specific performance requiring the City Council to enter into a contract with him in conformity with the calls for bids and his bid, and that the injunction should stand.

The judgment of this Court should be that the decree of the Circuit Court be modified, and that the cause be remanded to that Court for such further orders as may be necessary to carry into effect the conclusions herein announced.

Mr. Acting Associate Justice B. A. Morgan (concurring and dissenting): Action by the plaintiff, individually and as a citizen and taxpayer of the City of Florence, for the double purpose of compelling specific performance of an alleged contract with the City to lease to him the theatre auditorium, owned by the City, a part of the City Hall, and to enjoin the City from executing a lease thereof to another party, Schnibben & Howard, whose bid at a lower figure has been accepted. The date of the commencement of the action is September 6, 1923, and on that day, upon the verified complaint, a temporary restraining order, with a rule to show cause, was issued by his Honor, Judge DeVore, returnable before his Honor, Judge Shipp, at

Florence, on September 14, 1923. By agreement of counsel the cause was heard on the merits, upon the complaint and exhibits, the return and answer, and a traverse to the return, at the Fall term, 1923, by his Honor, Judge Dennis, presiding Judge, who filed a decree dated January 12, 1924, holding that the plaintiff had failed to establish a contract for a lease with the City, and was not, therefore, entitled to a decree of specific performance, but that as a taxpayer he was entitled to relief against the action of the City Council, in accepting the lower bid submitted by Schnibben & Howard, and issued an injunction accordingly. The plaintiff has appealed from so much of the decree as refused specific performance of the alleged contract, and the City Council has appealed from so much of it as awarded the injunction.

The facts underlying the controversy, as best we have been able to gather them from the record for appeal, appear to be as follows:

The City of Florence owns a City Hall, in which building is an opera house, which for many years has been leased by successive City Councils to private persons upon competitive bids, at steadily increasing rentals. In the year 1911, the plaintiff located at Florence for the purpose of operating a moving picture theatre, and acquired an unexpired lease of the opera house, which ended with that year. He then acquired a lease of it for three years, 1912 to 1914, inclusive, in his own name, at an annual rental of $900.00. The lease was renewed for three years and eight months, at an annual rental of $1,800. This lease expired in 1919, whereupon the opera house was leased to other parties, Schnibben & Howard, for three years, upon competitive bids, at an annual rental of $3,150. This lease was renewed for three years and expires during this year, 1924. In the meantime the plaintiff established his business at another location.

In June, 1923, it appears that a renewal of the lease to Schnibben & Howard, which was to expire in May, 1924, was under consideration by the Council; whereupon the plaintiff addressed a communication to the Mayor, dated June 22, 1923, protesting against the premature consideration of the matter and expressing his willingness, should it be gone into, to submit a proposition, and insisting that the matter should be conducted under sealed bids, as had invariably been the custom theretofore. Receiving no reply, he again wrote the Mayor on June 30th, to the same effect, and offered to pay an annual rental of $5,000 upon certain conditions. On July 12th, the Mayor answered the two letters of the plaintiff, stating that "at the next full meeting of the City Council I will present your proposition and advise you." On August 31st, a meeting of the City Council was held, attended by the plaintiff, one of the then lessees, Schnibben, and two others apparently interested. After a discussion of the matter the visitors retired, and the City Attorney, by direction of the Council, prepared and mailed to each one of the four a declaration, addressed, "To Whom It May Concern," that the City proposed to lease the opera house for a term of three years, beginning at the expiration of the unexpired lease in 1924, upon certain conditions, and advising that proposals would be received by the City Clerk September 5, 1923. Within the time stated the plaintiff submitted a proposition, under the terms of said declaration, to lease the opera house for a term of three years at $5,304 per annum, payable monthly. The next highest bid was submitted by Schnibben & Howard, the then lessees, at $4,350.

On September 5th, the City Council met, and after a consideration of the two bids, decided to accept the bid of Schnibben & Howard, at $4,350, claiming to have acted in their discretion for the best interests of the City, particularly in preventing a monopoly of the moving picture business by the plaintiff.

The plaintiff then instituted this action, as stated, for the double purpose: (1) As an individual, of obtaining a decree of specific performance of a contract of lease at $5,304; and (2) as a taxpayer, of enjoining the City Council from consummating the proposed lease to Schnibben & Howard at $4,350.

(The foregoing is taken from the opinion of Mr. Justice Cothran.)

The City Council contends that it, at the request of the plaintiff, set out its proposal for the purpose of receiving counter propositions, and had never surrendered its right of exercising discretion, and, until accepted by it, no counter proposition, of whatever character, imposed upon it any legal obligation. There had been written and verbal communications between the parties, and interviews and conferences without results. The plaintiff was party to all these, but, apparently, was without satisfaction. To bring the matter to a head, and to have before him in concrete form Council's attitude, he himself framed and filed the following inquiries, which, it will be observed, covered all questions involved in the previous interviews, correspondence, etc.:

"Hon. W. M. Waters, Mayor of Florence, S. C.—Dear Mr. Waters: I would like for Council to decide the following questions before submitting a bid on the opera house, which will have bearing on the amount I will offer:

"I. Do you intend to consider my bid on the same basis with Mr. Schnibben's?

"II. Number of years theatre is to be leased for?

"III. What repairs do you intend to make on theatre and what upkeep will you require of lessee?

"IV. How is rent to be paid?

"V. Amount of bond and what kind will you require?

"These have got to be decided on, and I think it is better to have an understanding before than argument after.

"I am,

"Yours very truly,

"[Signed] J. M. O'Dowd."

These were answered as follows:

"To Whom It May Concern: The City of Florence proposes to lease the opera house for a term of three years commencing upon the expiration of the present lease in 1924. The City will agree to repair the roof covering the said building and to replaster the same inside wherever it may be necessary and to cover the walls with two coats of paint. The City further agrees to put in repair the heating plant so as to fusnish adequate heat. The City will further during the term of the lease keep the roof free from leaks and will also repair the foundation of the said building should the same become necessary. The lessee will be expected to make any other improvements which he may desire at his own expense and during the terms of his lease keep the building and its equipment in first class condition, paying for the cost of so doing himself. The lessee will be required to arrange bond with some approved surety company in the sum of five thousand dollars conditiond for the payment of the rent and performance of all other covenants assumed by his lease. He will also be required to pay the City license assessed for the privilege of operating the theatre.

"All persons who desire to submit proposals for the lease of the building upon the terms herebefore set forth are required to reduce their proposals to writing and file the same with the City Clerk and Treasurer by nine-thirty o'clock on Wednesday, September the fifth, 1923."

These questions and the answers effectually removed, so far as the making of a contract is concerned, all former negotiations from entering as a factor in what from that time on should follow. In other words, these framed the issue for determining the first ground upon which plaintiff rests his case. The plaintiff contends that his direct response to the communication of Council in filing the highest bid was an acceptance of a binding offer of Council, and made the enforceable contract between them.

A mere call for bids by a municipality and a submission of the most favorable bid thereunder does not of itself constitute a full and complete contract. Supporting his demand, as an individual, for specific performance, the contention of the plaintiff is that the call for bids submitted by the City Council, interpreted by its terms in connection with the attendant circumstances, and followed by his submission of the highest bid, amounted to an acceptance of his bid by the City Council, and constituted a contract, enforceable by the Court, for a lease of the opera house for three years at $5,304 per annum.

The general rule, applied to the matter of advertisements or calls for bids on certain work or disposal of property proposed by a municipal corporation, is that the simple call for bids, followed by a submission of the most favorable bid, does not of itself constitute a complete contract; that the bid is simply an offer which creates no enforceable right in the bidder until it has been accepted. Williston on Contracts, § 31. *Spencer v. Harding,* L. R. 5 C. P., 561. *Kingston v. Petch,* 10 Exch., 610. *Topping v. Swords,* 1 E. D. Smith (N. Y.), 609. *State v. Lincoln Co.,* 35 Neb., 346; 53 N. W. 147. *State v. Dixon County,* 24 Neb., 106; 37 N. W., 936. *Anderson v. Board,* 122 Mo., 61; 27 S. W., 610; 26 L. R. A., 707 and note. *McNeil v. Boston Chamber of Commerce,* 154 Mass., 277; 28 N. E., 245; 13 L. R. A., 559. *Erving v. Mayor,* 131 N. Y., 133; 29 N. E., 1101. *Wilie v. Price,* 5 Rich. Eq., 91. *Howard v. School,* 78 Me., 230; 3 A., 657. *Leskie v. Haseltine,* 155 Pa., 98; 25 A., 886. *Price v. Fargo,* 24 N. D., 440; 139 N. W., 1054. *Elliot v. Minneapolis,* 59 Minn., 111; 60 N. W., 1081. *Gantenbein v. Pasco,* 71 Wash., 635; 129 P., 374. *Meader v. Zanello,* 109 Or., 562; 220 P., 115. *Bromley v. McHugh,* 122 Wash., 361; 210 P., 809. Under such circumstances, they are only proposals, and in order to constitute an enforceable obligation the bid must be accepted. *Anderson v. Board,* 122 Mo., 61; 27 S. W., 610; 26 L. R. A., 707.

The plaintiff makes further contention that Council agreed to consider his bid on equal terms with others; that it did not reserve to itself the right to reject any bid, and, inasmuch as his was the highest bid, that created the obligation and formal acceptance was not required.

It is true that no right to reject any bid was reserved, neither was there any proposition to accept the highest bid. The proposal of Council did not even contain an answer to inquiry No. 1; consequently, no promise was held out to him nor action accrued in that regard. 2 Dillon, Municipal Corp. (5th Ed.), § 811. *Colorado Co. v. Murphy,* 78 F., 28; 23 C. C. A., 631; 37 L. R. A., 630.

From all that had gone before to which the plaintiff was the militant party, he knew, or should have known, that a contract with him was being avoided, and that he could not rely upon general principle being overturned by their conduct to such extent that an exception to the rule would be created and a contract would be made complete by estoppel. Even if that were true, and we were permitted to go behind the written proposition, we would not be able to find any act of Council that looked to the making of a contract with the plaintiff—but the reverse. The paper handed plaintiff was nothing but an answer to his questions, a statement of what Council was going to do, and was the equivalent to an inquiry, "Now, what do you propose to do?" The plaintiff responded with the filing of his bid. It has not been accepted, and nothing has transpired between the parties before nor since the bid was filed that would justify a variance of the general principle or work of estoppel.

As a taxpayer the plaintiff seeks to prevent the execution of a contract by the City Council with Schnibben & Howard, upon the ground that an injustice, burden, and hardship would be visited upon the taxpayers of Florence; that Council was practically giving away to its favored ones a thousand dollars a year without proper return therefor, etc.

While on the first ground relied upon by plaintiff we did not feel that for the purpose of deciding that question we

could go behind the written statement already referred to, still, for the purpose of deciding this last question, we must take into account everything that transpired from the beginning.

While the personnel of Council had no doubt changed a number of times since 1911, still, beginning at that time, that body was for nearly ten years in contact with the plaintiff. There is nothing in the record that gives account of the general conduct of the parties, but it does disclose the fact that plaintiff was not solicited to resume similar former relations. Many good and valid reasons may exist, but they are not recorded for us. The Council, being the administrative agency for handling the business and property of the City of Florence, was compelled to lose sight of friendships or the lack of them and, in order to disregard the best offer for the use of the property that was to be let to others, must have some good and tangible reason for so doing. Council did not seek to know whether it could get an annual rental exceeding $2,700 or $3,600, and yet they admit that after the first communication from plaintiff they passed a resolution in which they expressed the intention of leasing the building to Schnibben & Howard on terms and conditions to be worked out later; that Schnibben was told of this action by Council and on the strength of it placed an order for seats. Plaintiff charged that the terms and conditions referred to were a term of three years at an annual rental of $2,700 or $3,600, and the only body who knew whether or not that was true went down in the record as not having knowledge or information sufficient to form a belief as to the truth of the allegations. It also appears that ten or eleven months before the current lease would expire, Council was about to enter into a lease to begin ten or eleven months hence, on terms and conditions not then agreed upon, and not letting anybody know about it either. Council contends now that it contracted with Schnibben & Howard, but the record does not disclose at what figure. The record contains

other instances which more than offset the reasons Council gives for its action, and these, added to those already pointed out, would indicate that the attitude of Council was arbirary, unreasonable, and not an exercise of discretion, but the execution of a will to do that which it started out to do. 2 Dillon, Mun. Corp., § 811. *Haesloop v. City Council of Charleston,* 123 S. C., 272; 115 S. E., 596.

For the reasons stated I think the order of Judge Dennis should be affirmed.